# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **Edrick Fuller** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **3-22CV1289-D** |
| **v.** | § | |
| | § | |
| **CIG Financial, LLC, a California Limited** | § | |
| **Liability Company; The Car Source, LLC,** | § | |
| **d/b/a Hide And Seek Recovery,** | § | |
| **Individually, and as Agent, Apparent Agent,** | § | |
| **Servant,and/or Employee of CIG Financial with** | § | |
| **Julius Sims The Repossession Agent,** | § | |
| **as Agent, Apparent Agent, Servant** | § | |
| **and/or Employee Of Hide And Seek Recovery**, | § | |
| | § | |
| **Defendants**, | § | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS

Plaintiff Edrick Fuller (Plaintiff) respectfully submits this

Memorandum of Law in opposition to the motion to dismiss ("Motion") filed by

defendant The Car Source, LLC dba Hide and Seek ("Defendant").

## PRELIMINARY STATEMENT

Pro-se Plaintiff filed his complaint June 24, 2022 unaware that the FDCPA

had a statute of limitation of one year from the time the violation occurred. Plaintiff

did not realize the FDCPA had a one year statute of limitation until The Defendant,

The Car Source filed its Motion to Dismiss. Plaintiff was under the belief that the statute of limitations for debt suits was four years. Even now knowing differently, Plaintiff has been trying to get this matter heard since April 21, 2020, as saved emails to and from former attorney John Hubbard would show. See (Exhibit 1) It is now apparent from The Car Sources motion to dismiss for claims being time barred, that CIG Financial, The Defendant and Plaintiffs former Attorney purposely conspired to toll the FDCPA one year statute of limitations that Plaintiff was unaware of at the time. Therefore, under the Equitable Doctrine, Defendants should be Equitably Estopped from asserting the Statute of Limitations as a defense,

## STATEMENT OF FACTS

Plaintiff first contacted Consumer Rights Attorney John Hubbard early April by phone, first email communication was sent April 19, 2020 after agreement to accept the case. By April 23, 2020, the Attorney had all of the details needed to file the claim, Plaintiff even researched cases where a tow truck driver drove off with someone in the car (*Smith-v-AFS-Acceptance-LLC happened in 2012*) and sent it to him to refer to. April 27, 2020, Plaintiff emailed him asking where they are at on the claim, figuring it has been filed. On May 5, Plaintiff emailed again asking for an update since he had not replied. On May 6, he replied and said he could get it filed in the next few days, then proceeded to ask "Who was the Lender"? Plaintiff

had told him over and over again who the lender was, and he even repeated to
Plaintiff  "CIG Financial Correct" when he was taking notes. (He asked Plaintiff
who the lender was when Plaintiff was thinking the case had already been filed ).
He also said he would get it filed in the next few days. (See Exhibit 1). On June 3,
2020, Plaintiff asked again where they were at in the process, after the attorney
called and asked did Plaintiff have a copy of the Arbitration agreement which
plaintiff provided. See (Exhibit 10). On June 15, the attorney sent a 40 percent
retainer agreement which Plaintiff thought he should have been sent if it was
needed. This caused another delay because of the 40 percent, which started to
make the plaintiff wonder. See (Exhibit 2). On August 4, the Attorney sent an
email saying that he is having a hard time getting Arbitration to accept the case
without full Arbitration agreement and that he would file in Dallas County District
Court See (Exhibit 3). On August 31, Plaintiff asked again if he filed. He replied
that same day that he had received the Arbitration agreement from CIG and was
going to file in Arbitration instead. (See Exhibit 3). Another delay. On Sep 1, the
attorney then emails Plaintiff with the Idea on not to file suit against CIG and only
file against The Defendant. This is when Plaintiffs eyebrows and ears went up,
because what Attorney says lets not sue the Finance company when there is a very
good reason to do so? It was at that point that the plaintiff figured that maybe CIG
had befriended the attorney and he was now working with them as well, which

could be causing the delay in the simple case for a Lawyer as to not being filed already. See (Exhibit 4) Plaintiff disagreed and told him to file against both. On Sep 21, Plaintiff asked again for an update, with no reply from the attorney for a month. See (Exhibit 4). On Oct 26, 2020 Plaintiff asked again if the case had been filed and to let the plaintiff know something. The attorney replied with an attachment showing he had filed for Arbitration October 15, 2020. See (Exhibit 5). After Plaintiffs repeated messages asking him if he filed, the attorney did not notify plaintiff that the case had been filed until 11 days after the filing and not until Plaintiff asked if he had filed. This was the last straw for Plaintiff with the Attorney. On Oct 27, Plaintiff let the attorney know that if Arbitration was not accepted by said date that something was going on besides honest representation, and that the Attorney need to remove himself from the case because it was becoming apparent that after he contacted CIG and The Defendant that he changed his stance and was causing unneeded delays. See (Exhibit 5). CIG Financial and The Defendant had until October 29, 2020 and November 13, 2020 to respond to Arbitration honoring their Contract where it is agreed to arbitrate any disputes, which they both ultimately failed to do. See (Exhibit 6). Looking back after now realizing that the FDCPA had a one year Statute of limitations, it is apparent that The Defendant and CIG, purposely, with the help and though Plaintiffs former attorney tried to toll the Federal Statute of limitations to escape Federal Liability.

Plaintiff could tell something fishy was amiss, but did not know what more it was then. Plaintiff was never once informed by the former attorney that the FDCPA limitations would run in one year. Being a Consumer Rights Attorney, he should have known that this was an FDCPA violation case and that the Limitations were one year. Looking back at the emails stating he would file the case in Dallas County District Court instead of the Federal U.S. District Court further leads me to believe former Attorney John Hubbard was breaching his fiduciary duty with his client for the benefit of the Defendants. To add, instead of sending the documents showing that CIG Financial and The Defendant did not respond to Arbitration by email, like the exchange of all of our other documents shared, instead the former attorney decided to mail them to Plaintiff  by mail and not notify Plaintiff  they were mailed. Another delay strategy used to toll the Limitations period on behalf of the defendants. The letter was not received until November 28,2020. Plaintiff did not know the letter had come until the first week of December. See (Exhibit 7), See (Exhibit 8).

Furthermore, during the end of 2020 and early 2021, it was a hard time getting in Contact with Lawyers and getting them to Return calls. Plaintiff finally attempted to hire another Consumer Law firm in January of 2021 who received all the information to file a claim and never returned calls after having Conversations with CIG Financial who has an inhouse Lawyer who works for their company, who

has his own extension and office at CIG Financial. After months of delayed responses, being ignored then finally being advised to file for Bankruptcy, Plaintiff then realizes that maybe Consumer Lawyers is not the route to go with CIG having an inhouse Consumer Lawyer who could through being a friend of a friend and through compensation could sway a Consumer Rights Attorney to help them avoid liability.  Plaintiff then attempted to hire someone who said they were licensed to practice Internationally, who drew up a complaint but then asked Plaintiff to sign an agreement for Power of Attorney instead of a retainer agreement and said that was the only way they would file the case. It was these occurrences that made Plaintiff realize that in order to bring this suit before the Court that he would have to do it ProSe because CIG had the compensative power to thwart Plaintiffs attempts if he hired a Lawyer who had to contact them. Pro se Plaintiff is not well versed in Law, therefore research on Case Law and and Rules of Civil procedure had to be conducted before a suit could be drafted and submitted. Unlike a licensed attorney whose job is drafting suits during work hours, Pro se Plaintiff is not afforded that luxury and can only do it when he is not working. It would have been wonderful to hire an attorney who could have done this for the plaintiff, which was the plaintiff's intentions and because it helps the economy as well. As a Result, Plaintiff was not able to file suit until June 14, 2022, not aware that the Statute Of Limitations had run on any.

## STANDARD OF REVIEW

In an ordinary civil action, the Federal Rules of Civil Procedure require a party to file "a short and plain statement of the grounds for the court's jurisdiction…." Fed. R. Civ. P. 8(a)(1). When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all allegations in the complaint as true. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965. All reasonable inferences from the complaint must be drawn in favor of the non-moving party. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004); Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001). A district court, in weighing a motion to dismiss, ask "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)). Under Rule 12, the burden rests squarely with the movant to demonstrate that no claim has been stated in the complaint upon which relief can be granted. Larsen v. AirTran Airways, Inc., No. 8:07-cv-442-T-17TBM, 2007 U.S. Dist. LEXIS 58601, 2007 WL 2320592, at *3 (M.D. Fla. Aug. 10, 2007). "The possible existence Case: 4:18-cv-00346-CDP Doc. #: 10 Filed: 04/20/18 Page: 3 of 9 PageID #: 28 Page 4 of 9 of a statute of limitations defense is not ordinarily a ground for a Rule 12(b)(6) dismissal unless

the complaint itself establishes the defense." Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008).

## THE FDCPA.

The FDCPA imposes civil liability upon debt collectors who violate its provisions. 15 U.S.C. §1692k. Section 1692e generally prohibits the use of any "false, deceptive or misleading representation … in connection with the collection of any debt" and then enumerates in sixteen subsections specific practices that fall within this prohibition. One subsection provides that a debt collector may not "communicat[e]…to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. §1692e(8) (emphasis added). A one-year statute of limitations applies to actions brought pursuant to the FDCPA. "An action to enforce any liability created by this title may be brought within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d). Therefore, to resolve this motion, the Court, assuming the facts as presented by the plaintiffs, must determine when the FDCPA violation accrued. See e.g. Fraenkel v. Messerli & Kramer, P.A., 2004 U.S. Dist. LEXIS 15196, *11 (D.C.Minn. July 29, 2004).

## ARGUMENT

Defendant does not deny that its actions violated the FDCPA. Rather, it argues that Plaintiffs Complaint is time-barred because he did not file it by

December 31, of 2020 for the FDCPA and by December 31, of 2021 for the claims with a 2 years statute of limitations. The Defendant and CIG Financial by the Doctrine Of Equitable Tolling should be barred from asserting the statute of limitations defense asking the Courts to honor a statute where the defendant's own intentional misconduct prevented the plaintiff from timely filing suit, when they themselves did not honor their own Contract to dispute this matter in Arbitration which would have been within the one year Statute of Limitations. Also by failing to respond to Arbitration, AAA declined to Arbitrate any Future demands for Arbitration for The Defendant and CIG Financial for not responding. See (Exhibit 9). Tolling the statute of limitations in the present case ensures fairness and does not prejudice Defendants. As stated, an underlying policy of a statute of limitation is to prevent unfair surprise to a defendant. See Burnett, 380 U.S. at 428. The present action presents no surprise to Defendants, The Defendant and CIG knew the Plaintiff was still in pursuit of filing suit, especially CIG which is why they have not joined The Car Source in asserting the Statute of Limitations defense in their motions to dismiss. Both The Car Source and CiG are trying to loophole out of liability by fooling the courts delaying the matter in scandalous fashions.

The equitable doctrine, known as equitable estoppel – or, "equitable tolling" – is consistent with the principle that a wrongdoer should not be able to benefit from his own wrong.

A unanimous Supreme Court on April 21, 2022, issued an important ruling applicable when consumer practitioners have difficulty meeting a limitations period found in consumer legislation.  In *Boechler, P.C. v. Commissioner of Internal Revenue***,** *2022 WL 1177496* (U.S. April 21, 2022), the Court ruled that a federal time deadline is jurisdictional only if Congress clearly states that it is.  If a limitations period instead is non jurisdictional, then the limitations period is presumptively subject to equitable tolling.

*Boechler, P.C. v. Commissioner of Internal Revenue* thus means that equitable tolling is an available approach to extend a federal consumer law's limitations period, where the facts are sufficient to justify the tolling.

**Examples of Equitable Tolling**

 *Boechler, P.C. v. Commissioner of Internal Revenue***,** *2022*  is a good precedent that equitable tolling is available to extend the limitations period in consumer legislation.  But this is only the first step.  Next, the Plaintiff must make a compelling case that equitable tolling is appropriate in the specific circumstances.

For example, in Boechler the Supreme Court remanded the case for consideration whether the facts justify application of equitable tolling to the case.

Examples of compelling circumstances for equitable tolling may include, but are not limited in any way to the following:

> **• The consumer seeks to bring an action within the limitations period, but the defendant insists on enforcement of an arbitration requirement, and then refuses to participate in the arbitration. Even if the limitations period expires while the consumer was fruitlessly trying to arbitrate the case, equitable tolling should allow for the action later to be brought in court.**
> • The consumer files the action within the limitations period, but the case must be re-filed again for technical reasons. See American Pipe and Construction Co. v. Utah, 414 U.S. 538 (1974).
> • The consumer is a class member in a class action that is later dismissed after the statute of limitations has expired.
> • The consumer has no control over discovery delays, and only after discovery learns that a new party defendant should be added, equitable tolling should apply to allow for the addition of that defendant.
> • Mental and/or physical illness delays filing of the claim.
> **• The consumer delayed a lawsuit at the defendant's inducement.**

### The Doctrine of Equitable Tolling Applies

The Supreme Court has counseled that 'limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute." Stewart v. Bureaus Inv. Grp. No. 1, LLC, 24 F.Supp. 3d 1142, 1159 (M.D.Ala. 2014) (quoting Young v. United States, 535 U.S. 43, 49 (2002)

"Equitable Case: 4:18-cv-00346-CDP Doc. #: 10 Filed: 04/20/18 Page: 5 of 9

PageID #: 30 Page 6 of 9 tolling is the doctrine under which plaintiffs may sue

after the statutory time period has expired if they have been prevented from doing

so due to inequitable circumstances." Ohuche v. Bank of Am., N.A.


Finally, "the filing of a Demand for Arbitration itself shows the proper diligence on

the part of the plaintiff which statutes of limitations were intended to insure. Since the

plaintiff exhibited this very diligence before the expiration of one year from the date

of the incident, he cannot be said to have "slept on his rights. *See Galligan v. Westfield

Centre Service, Inc*. The sole cause of plaintiff's failure to commence an action

properly is his former counsel's breach of fiduciary duties as Plaintiff relied on his

Consumer Rights attorney to know the laws that he practices in order to represent

Plaintiff to the fullest. Supreme Courts have previously noted that "it seems

inequitable that an injured person * * * should be denied his day in court solely

because of his ignorance, if he is otherwise blameless." *Lopez*, 62 N.J. at 274. When the

ignorance is not the plaintiff's, but that of his previous attorney, it would be even more

unjust to deny him an opportunity to prosecute his cause of action. Accordingly, we

find that there was at least "minimal substantial compliance," *Grubb v. J.C. Penney

Co.*, *Inc.,* 155 N.J. Super. 103 , 106 (App.Div. 1978), with the requirements of the

limitations statute. As a result, The equitable tolling doctrine should be applied in

Plaintiffs case.

## CONCLUSION

Plaintiff Edrick Fuller respectfully requests that this Court adopt The Equitable Tolling Doctrine in this case and deny Defendant's The Car Source Motion to Dismiss in its entirety.

Respectfully Submitted,

/s/Edrick Paul Fuller

Edrick Paul Fuller

1906 Berwick

Dallas, Texas 75203

Telephone: 214-941-1125

Email: edrickfuller@my.untdallas.edu

## CERTIFICATE OF SERVICE

I hereby certify on the 29th day of July 2022, I electronically filed this document with the U.S. District Court for the Northern District of Texas and, through the electronic filing system, a copy of the foregoing document was served on the following counsel and parties of record:

Farrah I. Ahmed

State Bar No. 24071934

fahmed@thompsoncoe.com

700 N. Pearl Street, 25th Floor

Plaza of the Americas

Dallas, Texas 75201

Telephone: (214) 871-8200

Facsimile: (214) 871-8209

Scott H. Palmer, P.C.

Niles Illich

Texas Bar No. 24069969

15455 Dallas Pkwy, Suite 540

Addison, TX 75001

Tel. (214) 891-3382

niles@scottpalmerlaw.com

                                        /s/Edrick Paul Fuller

                                        Edrick Paul Fuller

(Exhibit 1)



(Exhibit 2)



johnchubbard@gmail.com

35 of 46

**Re: Edrick Fuller**    Inbox ×

**John Hubbard** <johnchubbard@gmail.com>                                                    Mon, Jun 15, 2020, 2:42 PM
to me

Edrick,

I forgot to send this over earlier.  Please sign it so I can take action on your behalf.  Also, it explains how I only get paid if we collect from the defendants.  You will not owe me out of pocket.  You can take a picture of the signed paper if that is easier.

Finally, there is a decent chance they will counterclaim for what they claim you owe on the truck.  They do this most of the time.  I think you have a good claim regardless and didn't want you to be surprised.

On Fri, Jun 5, 2020 at 10:03 AM E F <edricpauls@gmail.com> wrote:
    Yes, I will be looking for your call

    On Fri, Jun 5, 2020, 8:04 AM John Hubbard <johnchubbard@gmail.com> wrote:
        Edrick,

        Are you going to be around today?  I'll give you a quick call to get some info and let you know the progress.

        On Wed, Jun 3, 2020 at 7:33 PM E F <edricpauls@gmail.com> wrote:
            Good evening John. I was wondering what is our process now and what to look forward to.

            On Tue, May 12, 2020, 3:15 PM John Hubbard <johnchubbard@gmail.com> wrote:
                On page 2, there is a little arbitration part that references another arbitration agreement.  You wouldn't happen to have that would you?

(Exhibit 3)

 Gmail

E F <edricpauls@gmail.com>

---

**Re: Edrick Fuller**

**John Hubbard** <johnchubbard@gmail.com>
To: E F <edricpauls@gmail.com>

Mon, Aug 31, 2020 at 6:06 PM

Edrick,

Sorry, copied the wrong message over.  They sent the agreement over to me so I can file the arbitration claim.

> On Mon, Aug 31, 2020 at 6:01 PM E F <edricpauls@gmail.com> wrote:
> You say settlement, you never talked to me about a settlement. What settlement are they trying to do?
>
>> On Mon, Aug 31, 2020, 6:00 PM E F <edricpauls@gmail.com> wrote:
>> You filed for bankruptcy without telling me? I do not want to do that. Why do we have to file for bankruptcy?
>>
>>> On Mon, Aug 31, 2020, 5:40 PM John Hubbard <johnchubbard@gmail.com> wrote:
>>> Edrick,
>>>
>>> We are waiting on your bankruptcy lawyer to file the documents with the bankruptcy court to approve the settlement.
>>>
>>>> On Mon, Aug 31, 2020 at 5:37 PM E F <edricpauls@gmail.com> wrote:
>>>> Good evening John,
>>>> I haven't heard from you in a couple of weeks. Have you filed?
>>>>
>>>>> On Tue, Aug 4, 2020, 4:38 PM John Hubbard <johnchubbard@gmail.com> wrote:
>>>>> They are, but if they don't, all we can do is sue them which is what we were doing anyway.  I'll send a letter to the legal dept and ask.
>>>>>
>>>>>> On Tue, Aug 4, 2020 at 4:32 PM John Hubbard <johnchubbard@gmail.com> wrote:
>>>>>>
>>>>>>> On Tue, Aug 4, 2020 at 4:30 PM E F <edricpauls@gmail.com> wrote:
>>>>>>> Is there any way I can get the last page from the company? Aren't they supposed to hand that over if you ask for it?
>>>>>>>
>>>>>>>> On Tue, Aug 4, 2020, 3:26 PM John Hubbard <johnchubbard@gmail.com> wrote:
>>>>>>>> Edrick,
>>>>>>>>
>>>>>>>> I'm having a problem with arbitration accepting the case without the agreement on the last page that we can't find.
>>>>>>>> That's fine though, I will get it filed in Dallas County District and ask for it to be set on the fast track non-jury docket.
>>>>>>>> That should prevent any years-long delay in getting it resolved due to the virus shutting down juries.

(Exhibit 4)

 Gmail

E F <edricpauls@gmail.com>

## Re: Inform Browser : 5.740.34.0 - Reports - Incident Report

**E F** <edricpauls@gmail.com>                                                          Mon, Sep 21, 2020 at 3:07 PM
To: John Hubbard <johnchubbard@gmail.com>

Good evening. Just checking in for a update. How are things going with the case?

On Mon, Sep 7, 2020, 9:20 PM E F <edricpauls@gmail.com> wrote:
> Sue them both, mainly CIG. She kept saying my Agent, that means CIG was responsible. We need to ask for those telephone calls
> as well. No need for me to fabricate anything, it is all recorded. We sat in my driveway with me in the air from 6 something all the
> way until the police were called. The was a time when I told them to let me down and She said no, my agent will not let you down,
> and he heard that as well. He listening to who paying him. But he's supposed to know the law as well, so sue them both.

On Wed, Sep 2, 2020, 7:10 AM John Hubbard <johnchubbard@gmail.com> wrote:
> They do not have to sue for only the settlement amount -- they can sue for the whole amount and attorney fees.  They can add up
> quick because I am going to claim a lot from them too.  We can't sue separately.  They could combine them.  I think they meant
> car insurance on the report and not the business insurance.

On Tue, Sep 1, 2020 at 12:44 PM E F <edricpauls@gmail.com> wrote:
>> The balance of the truck is around 13000 or less, but since they sent me that letter with the offer, that is as much as they can
>> sue for the truck, which I am willing to deal with. Can we sue both separately? I seen where the report said no insurance, but I
>> was not sure if they were referring to me or him

On Tue, Sep 1, 2020, 12:28 PM John Hubbard <johnchubbard@gmail.com> wrote:
>> Thanks for sending it over.
>>
>> I have an idea that might make the case more valuable.  The repo company has to buy an insurance policy that covers the
>> repo company and lender (CIG) if there is a claim.  So adding in CIG doesn't really increase the value of the case because
>> the money comes out of the same source.  But, we if sue CIG, they are almost certainly going to countersue for the truck and
>> the 17k (or whatever is left on the balance).  So I think we may come out better just filing against the repo company for now
>> and seeing how things progress.  We can add in CIG if we need to after we see how things progress.  What do you think?

(Exhibit 5)


E F <edricpauls@gmail.com>

## Re: Arbitration

**E F** <edricpauls@gmail.com>
To: John Hubbard <johnchubbard@gmail.com>

Tue, Oct 27, 2020 at 8:44 AM

Honestly. I am not pleased with the way this is going with you with this case. When you said only file against Hide and Seek and not CIG, I really lost trust then, no Lawyer would really say lets not sue the bank who was responsible. Then you are so bland with your messages making me think you work for them. You just filed on the 15th, which is something else I am not pleased with at all. If they do not do register by the 29, then I know that something else besides business is going on and I would like you to stop where you are on the case. I go to UNT Dallas and I am sure I can be lead in the right direction closer to home with someone I can talk to and willing to do their work for me. This is an easy case, but it has become difficult with you, nothing is happening.

On Mon, Oct 26, 2020 at 5:47 PM John Hubbard <johnchubbard@gmail.com> wrote:
Edrick,

Yes, it is filed and they are in the process of reviewing the contract
and getting things started.  The last letter I got from them is
attached and it explains what is going on right now.

On Mon, Oct 26, 2020 at 5:44 PM E F <edricpauls@gmail.com> wrote:
>
> Have you filed anything yet? I have not heard from me in weeks so I am not sure if you have done anything. Please let me know something

(Exhibit 6)



1101 Laurel Oak Road
Voorhees, NJ 08043

October 15, 2020

CIG Financial
6 Executive Circle
Suite 100
Irvine, CA 92614
Via Mail

The Car Source, LLC
1404 Vinylex Drive
Carrollton, TX 75006
Via Mail

**Case Number: 01-20-0015-1540**

Edrick Fuller
-vs-
CIG Financial, LLC
-vs-
The Car Source, LLC, d/b/a Hide and Seek Recovery

Dear Parties:

The claimant has filed with us a demand for arbitration. The American Arbitration Association ("AAA") has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

Under R-12 of the Consumer Rules, businesses that provide for AAA arbitration in a consumer contract are obligated to submit their current or proposed consumer agreements to the AAA for review and inclusion on the Consumer Clause Registry ("Registry"). The AAA reviews the agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable.

This business has not previously submitted its consumer arbitration clause for review. As such, the AAA will review the clause for this matter on an expedited basis. The additional fee for this expedited review is $250, payable by the business.

**The business is also directed to submit its current consumer arbitration clause for inclusion on the Registry at** https://www.adr.org/Consumer at which time the business will also incur a $500 Registry fee. Once the business' clause is registered, it will no longer be assessed the $250 additional expedited review fee on each consumer case filed.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $300. We have received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, **the business is requested to submit filing fees of $300, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $2,500, totaling $3,050**.

**Please note payment should be submitted by credit card or electronic check. Please confirm the email address AAA may send a secured paylink with instructions to submit payment via either method.** In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

**The requested payment should be received no later than October 29, 2020** and the AAA may decline to administer this dispute if the business does not timely respond. It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

Referring to Rule R-9 of the Consumer Arbitration Rules, if a party's claim is within the jurisdiction of a small claims court, either party may choose to exercise the small claims option. If either party would like this matter decided by a small claims court, please send your written request to the Consumer Filing Team and copy all other parties.

No answering statement or counterclaim is due at this time and the parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Thank you for your attention to this matter. If you have any questions please feel free to contact us.

Sincerely,
Consumer Filing
Direct Dial: (877)495-4185
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

cc:    John C. Hubbard, Esq.
       John C. Hubbard, LLC
       PO Box 953
       Birmingham, AL 35201
       Via Email to: jch@jch-law.com

(Exhibit 7)



E F <edricpauls@gmail.com>

**Your Daily Digest for Sat, Nov 28**
1 message

**USPS Informed Delivery** <USPSInformeddelivery@informeddelivery.usps.com>       Sat, Nov 28, 2020 at 8:29 AM
To: edricpauls@gmail.com

You have mail and packages arriving soon.                                                              11/28/2020

 **COMING TO YOUR MAILBOX SOON.**

$$\boxed{\boxtimes \text{ MAIL}}$$





(Exhibit 8)



1101 Laurel Oak Road
Voorhees, NJ 08043

October 30, 2020

CIG Financial
6 Executive Circle
Suite 100
Irvine, CA 92614
Via Mail

The Car Source, LLC
1404 Vinylex Drive
Carrollton, TX 75006
Via Mail

**Case Number: 01-20-0015-1540**

Edrick Fuller
-vs-
CIG Financial, LLC
-vs-
The Car Source, LLC, d/b/a Hide and Seek Recovery

Dear Parties:

We have not received the administrative fees and arbitrator compensation from respondent as requested in our previous correspondence. **Respondent is requested to remit payment in the amount of $3050 to the AAA to be received by November 13, 2020.** As the claimant has met the filing requirements, respondent's fee is due regardless of whether the case settles or is withdrawn.

If payment was already sent, please send an email with the payment details so that payment is properly allocated. If this non-payment is simply an oversight on respondent's behalf, we trust payment will be made without delay.

Please note: should the business not comply with our request by the above response date, we may decline to administer any other consumer disputes involving this business and request that the business remove the AAA name from its arbitration clause so that there is no confusion to the public regarding our decision. Furthermore, pursuant to the R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration,

either party may choose to submit its dispute to the appropriate court for resolution.

At this time we are inquiring as to whether the consumer is willing to pay this outstanding amount, minus the expedited review fee of $250, and seek recovery of these fees through the arbitrator's award. Claimant is not obligated to pay respondent's fee. Should claimant decide to advance the business' portion of the fee, please email me before the business' response deadline.

If we do not timely receive the business' portion of the filing fees, we will notify the parties that we have administratively closed this case and refund any payment received from claimant. Please note payment should be submitted by credit card or electronic check. Please confirm the email address AAA may send a secured Paylink with instructions to submit payment via either method. In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

Thank you for your attention to this matter. If for any reason respondent will not be able to comply with our request by the noted response date, please send an email requesting an extension prior to the deadline. Please email consumerfiling@adr.org if you have any questions.

Sincerely,

Consumer Filing Team
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

Cc:   John C. Hubbard, Esq.
      John C. Hubbard, LLC
      PO Box 953
      Birmingham, AL 35201
      Via Email to: jch@jch-law.com

(Exhibit 9)



AMERICAN ARBITRATION ASSOCIATION®   INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

1101 Laurel Oak Road
Voorhees, NJ 08043
Telephone: (856)435-6401

November 23, 2020

John C. Hubbard, Esq.
John C. Hubbard, LLC
PO Box 953
Birmingham, AL 35201
Via Email to: jch@jch-law.com

CIG Financial
6 Executive Circle
Suite 100
Irvine, CA 92614
Via Mail

The Car Source, LLC
1404 Vinylex Drive
Carrollton, TX 75006
Via Mail

Case Number: 01-20-0015-1540

Edrick Fuller
-vs-
CIG Financial, LLC
-vs-
The Car Source, LLC, d/b/a Hide and Seek Recovery

Dear Parties:

As of this date we have not received the required fees from the business in this matter. Accordingly, we must decline to administer this case and have closed our file. According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Any payment submitted by a party will be refunded shortly.

Further, because the business' failure to remit the foregoing constitutes a failure to adhere to our policies regarding consumer claims, we may decline to administer future consumer arbitrations involving CIG Financial. The AAA's consumer policies can be found on the AAA's website, www.adr.org. We request that the business remove the AAA name from its consumer arbitration clause so that there is no confusion to the public regarding our decision.

If the business advises the AAA in the future of its intention to comply with the AAA's Consumer Arbitration Rules and if applicable, resolves any outstanding payment obligations, the AAA may consider at its sole discretion, accepting newly filed consumer cases going forward.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a

complete case file.  Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the date of this letter.

If you have any questions, please email ConsumerFiling@adr.org.

Sincerely,

Consumer Filing Team
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

JCH@JCHUBBARDLAW.COM
TEL: (205) 378-8121
FAX: (205) 690-4525

| JOHN C. HUBBARD, LLC |

PO BOX 953
BIRMINGHAM, AL 35203
WWW.JCHUBBARDLAW.COM

November 24, 2020

Edrick Fuller
1906 Berwick
Dallas, TX 75203

Re:    *Edrick Fuller v. CIG Financial, LLC - Case 01-20-0015-1540*

Dear Mr. Fuller:

CIG and the repossession company failed to answer the arbitration complaint and the case was dismissed. The correspondence is enclosed. Your case will need to be filed in court. It is my understanding that you want a new attorney to represent you. Therefore, I will not be filing your case in court and will not otherwise be taking any future action on your behalf. Please be advised that your claims must be filed in court within a certain time or they could be barred forever. Please feel free to contact me with any questions.

Respectfully Yours,

John C. Hubbard

(Exhibit 10)

## ILAW 553-TX-ARB-eps 4/18

### MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

Dealer Number **P110553**          Contract Number _____

| | |
|---|---|
| BUYER **EDRICK FULLER** | SELLER/CREDITOR **JENO AUTOPLEX** |
| ADDRESS **1906 BERWICK** | ADDRESS **6301 DENTON HWY** |
| CITY **DALLAS**    STATE **TX**    ZIP **75203** | CITY **FORT WORTH**    STATE **TX**    ZIP **76148** |
| PHONE **(214) 941-1125** | PHONE **(817) 281-9911** |

| |
|---|
| CO-BUYER |
| ADDRESS |
| CITY    STATE    ZIP |
| PHONE |

The Buyer is referred to as "you" or "your." The Seller is referred to as "we" or "us." This contract may be transferred by the Seller.
**PROMISE TO PAY:** The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in the Itemization of Amount Financed.
By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments in U.S. funds according to the Payment Schedule in this contract. If more than one person signs as a buyer, you agree to keep all the promises in this agreement even if the others do not.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

### VEHICLE IDENTIFICATION

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| | | | | ☐ NEW | PERSONAL, FAMILY, OR HOUSEHOLD, |
| | | | | ☐ DEMONSTRATOR | UNLESS OTHERWISE INDICATED BELOW |
| | | | | ☐ FACTORY | If either of the boxes below is checked, Chapter 353 |
| 2013 | FORD TRUCK | F150 PICKUP | 1FTFX1CF0DFA46085 | OFFICIAL/EXECUTIVE | of the Texas Finance Code applies to this Contract. |
| | | | | ☒ USED | ☐ BUSINESS OR COMMERCIAL |
| | | | | | ☐ AGRICULTURAL |

Trade-in: Make _____          Model _____
Year _____ VIN _____          License No. _____

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ **1500.00** |
|---|---|---|---|---|
| **21.9000** % | $ **7969.01** | $ **14650.00** | $ **22619.01** | $ **24119.01** |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 51 | 443.51 | Monthly beginning 02/08/19 |
| | | |
| | | |

Or as follows

**Late Charge:** If we do not receive your entire payment within __15__ days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of _5%_ of the scheduled payment.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** We will have a security interest in the vehicle being purchased.
**Additional Information:** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

**SELLER'S DISCLAIMER OF WARRANTIES**
Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation: Guía para compradores de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**APPLICABLE LAW**
Federal and Texas law apply to this contract.

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

This PROVISION applies to this contract only if the vehicle financed in the contract was purchased for personal, family, or household use.

Buyer Signs X _____    Co-Buyer Signs X _____          LAW 553-TX-ARB-eps4/18 v1   Page 1 of 6

## ITEMIZATION OF AMOUNT FINANCED

1  Cash Price (including any accessories, services, taxes,
$N/A   **Sales Tax**   935.02
$N/A  , and  $N/A  )  $  15895.30  (1)

2  Total Downpayment = (if negative, enter "0" and see Line 4A below)

| | | |
|---|---|---|
| Gross Trade-In | $ | N/A |
| – Pay Off Made By Seller | $ | N/A |
| – Cash Paid to Buyer for Trade-In | $ | N/A |
| = Net Trade-In | $ | N/A |
| + Cash | $ | 1500.00 |
| + Mfg. Rebate | $ | N/A |
| + Other (describe) | $ | N/A |
| + Other (describe) | $ | N/A |
| + Other (describe) | $ | N/A |
| + Other (describe) Trade-In Credit Agreement Benefit | $ | N/A |

Total Downpayment  $  1500.00  (2)

3  Unpaid Balance of Cash Price (1 minus 2)  $  14395.30  (3)

4  Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts.):

A  Net trade-in payoff to _____  $  N/A
B  Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
Life  $  N/A
Disability  $  N/A  |  $  N/A
C  Other Optional Insurance Paid to Insurance Company or Companies  $  N/A
D  Official Fees Paid to Government Agencies

| | | | | | |
|---|---|---|---|---|---|
| 1) to | N/A | for | N/A | $ | N/A |
| 2) to | N/A | for | N/A | $ | N/A |
| 3) to | N/A | for | N/A | $ | N/A |

E  Debt Cancellation Agreement Fee Paid to the Seller  $  N/A
F  Dealer's Inventory Tax (if Not Included in Cash Price)  $  37.40
G  Sales Tax (if Not Included in Cash Price)  $  N/A
H  Other Taxes (if Not Included in Cash Price)  $  N/A
I  Government License and/or Registration Fees
**License and/or Reg**  $  58.80
J  Government Certificate of Title Fees  $  33.50
K  Government Vehicle Inspection Fees  $  N/A
L  Deputy Service Fee Paid to Dealer  $  N/A
M  Documentary Fee (Cargo Documental)  $  125.00

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW.

UN CARGO DOCUMENTAL NO ES UN CARGO OFICIAL. LA LEY NO EXIGE QUE SE IMPONGA UN CARGO DOCUMENTAL. PERO ÉSTE PODRÍA COBRARSE A LOS COMPRADORES POR EL MANEJO DE LA DOCUMENTACIÓN EN RELACIÓN CON LA VENTA. UN CARGO DOCUMENTAL NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN SE EXIGE POR LEY.

N  Other Charges (Seller must identify who is paid and describe purpose.)

| | | | |
|---|---|---|---|
| to State | for Plate Transfer Fee | $ | N/A |
| to Seller | for Trade-In Credit Agreement | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |
| to | for | $ | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf  $  254.70  (4)

5  Amount Financed (3 + 4)  $  14650.00  (5)

Buyer Signs X _____  Co-Buyer Signs X _____

LAW 553-TX-ARB-eps 4/18 v1   Page 2 of 6

---

**LIABILITY INSURANCE:** THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**LEGAL LIMITATIONS ON OUR RIGHTS**
If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**SERVICING AND COLLECTION CONTACTS**
We may try to contact you at any mailing address, e-mail address, or phone number you give us as the law allows. We may try to contact you in writing (including mail, e-mail, and text messages) and by phone (including prerecorded or artificial voice messages and automatic telephone dialing systems).

**Returned Check Charge:** You agree to pay a charge of $ 30 if any check you give us is dishonored or any electronic payment is returned unpaid.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____

Co-Buyer Signs X _____