IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EDRICK FULLER,          §<br>                         §<br>     Plaintiff,          §<br>                         §<br>VS.                      §   Civil Action No. 3:22-CV-1289-D<br>                         §<br>CIG FINANCIAL, LLC, THE CAR §<br>SOURCE, LLC d/b/a HIDE AND SEEK §<br>RECOVERY, and JULIUS SIMS, §<br>                         §<br>     Defendants.         § | |

MEMORANDUM OPINION
AND ORDER

This is an action by *pro se* plaintiff Edrick Fuller ("Fuller") that arises from an attempt to repossess his pickup truck. He alleges a federal-law claim under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6)(A) ("FDCPA"), and state-law claims under § 9.609 of the Texas Uniform Commercial Code ("UCC"), Tex. Bus. & Com. Code Ann. § 9.609, the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. § 392.001-404 (West 2016), and for negligence, willful, wanton behavior, battery, and intentional infliction of emotional distress ("IIED"). Defendant CIG Financial, LLC ("CIG"), one of three defendants,[1] moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted, or, alternatively under Rule 12(e) for a more definite statement of Fuller's battery claim. For the reasons explained, the court grants in

---

[1] Only CIG has filed such a motion. Fuller's claims against the other two defendants are unaffected by this memorandum opinion and order. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 2017 WL 2984048, at *5 (N.D. Tex. July 13, 2017) (Kinkeade, J.).

part and denies in part CIG's motion to dismiss and denies CIG's alternative motion for a more definite statement.

I

The relevant background facts are largely set out in the court's recent memorandum opinion and order and need not be repeated at length. *See Fuller v. CIG Fin., LLC*, 2022 WL 4071964, at *1 (N.D. Tex. Sept. 2, 2022) (Fitzwater, J.). The court assumes that the parties are familiar with the background facts and procedural history of this case.

II

In deciding a motion to dismiss under Rule 12(b)(6), the court evaluates the sufficiency of Fuller's amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and alteration omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Glover v. Quality Air Tech., Ltd.*, 2014 WL 2883893, at *1 (N.D. Tex. June 25, 2014) (Fitzwater, C.J.) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is something between probability and possibility. *Id*.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). Thus "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

III

The court turns first to CIG's motion to dismiss Fuller's FDCPA claim and his interrelated state statutory claims.

A

A debt collector violates the FDCPA by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). "Courts look to state law to determine whether the secured party had a present right to possession of the collateral." *Sinegal v. Big Horn Auto Sales, Inc.*, 2022 WL 799908, at *3 (S.D. Tex. Mar. 16, 2022) (Rosenthal, C.J.) (internal quotation marks omitted). "Under Texas law, '[a]fter default, a secured party . . . may take possession of the collateral . . . without judicial process, if it proceeds without

- 3 -

breach of the peace.'" *Id.* (quoting Tex. Bus. & Com. Code Ann. § 9.609).

"[O]ne factor for courts to consider when determining if a breach of the peace occurred is whether there was a confrontation between the repossession agent and the debtor. If there was a confrontation, the court must decide whether the agent avoided additional confrontation." *Davis v. Toyota Motor Credit*, 2013 WL 4786328, at *8 (S.D. Tex. Sept. 6, 2013). And if a debt collector "[has] not already peaceably removed the vehicle when the owner [objects], [its] continuation with the attempt at repossession [is] no longer peaceable and without a breach of the peace." *Chapa v. Traciers & Assocs.*, 267 S.W.3d 386, 394 (Tex. App. 2008, no pet.) (internal quotation marks omitted) (quoting *Nixon v. Halpin*, 620 So.2d 796, 798 (Fla. Dist. Ct. App. 1993)).

Additionally, the TDCPA prohibits certain threatening or coercive debt collection practices. Relevant here, the TDCPA provides:

> (a) [i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: (1) using or threatening to use violence or other criminal means to cause harm to a person or property of a person; . . . or (8) threatening to take an action prohibited by law.

Tex. Fin. Code Ann. § 392.301(a) (West 2016).

Thus where a debt collector breaches the peace while effecting a repossession of property—thereby violating Texas law regarding nonjudicial repossessions—the debt collector does not have a right to repossession under 15 U.S.C. § 1692f. *See Sinegal*, 2022 WL 799908, at *3. And the debt collector will also have violated the TDCPA because he

- 4 -

attempted to repossess property in a manner prohibited by law. *See id*.

B

Fuller has plausibly pleaded claims under the FDCPA and Texas law so as to avoid dismissal under Rule 12(b)(6). Accepting the factual allegations of the amended complaint as true, Fuller objected to the repossession of his pickup truck several times, he physically attempted to stop the repossession, and his objections to the attempt to repossess his pickup truck persisted for several hours. Fuller also alleges that defendant Julius Sims ("Sims"), the repossession agent, continued the repossession process after Fuller objected. These facts, coupled with Fuller's reference to state law regarding nonjudicial repossession, plausibly plead a breach of the peace in Sims's attempts to take possession of the pickup truck. Therefore, Fuller has plausibly pleaded that CIG, through its agent Sims,[2] violated Texas law by attempting to effect a nonjudicial repossession in a manner that breached the peace, and by using debt collection practices in a manner prohibited by law. Consequently, he has also

---

[2] Throughout the amended complaint, Fuller alleges that Sims was an "agent" of defendants The Car Source, LLC d/b/a Hide and Seek Recovery and CIG, and that CIG hired the other two defendants to repossess Fuller's vehicle. *See, e.g.*, Am. Compl. ¶¶ 28, 35 [first], 31 [third]. "The court must liberally construe the allegations of a *pro se* complaint." *Obinyan v. Prime Therapeutics LLC*, 2020 WL 5351607, at *1 (N.D. Tex. Mar. 5, 2020) (Fitzwater, J.). Liberally construing the amended complaint, and viewing the facts alleged in the light most favorable to Fuller, *see Bramlett*, 855 F.Supp.2d at 618, the court construes the references to an "agency" relationship as including Sims either as an employee or as an independent contractor. The existence of either could support Fuller's claims for relief. Therefore, the court concludes that Fuller has adequately pleaded a relevant agency relationship for purposes of all of his claims. At the very least, given the complicated nature of the analysis involved in ascertaining the existence of an employee or independent contractor relationship, Fuller "should be afforded an opportunity to conduct discovery . . . before he must risk dismissal of his suit." *Obinyan*, 2020 WL 5351607, at *1.

adequately alleged that CIG violated the FDCPA by threatening to take nonjudicial action to effect a repossession when it did not have a present right to possess the vehicle. 15 U.S.C. § 1692f(6)(A).

Fuller has alleged facts that are sufficient to state plausible claims for relief under the FDCPA, § 9.609 of the Texas UCC, and the TDCPA. Accordingly, the court denies CIG's motion to dismiss these claims.

IV

The court now considers CIG's motion to dismiss Fuller's negligent hiring, retention, and supervision claims and his claim against CIG for "willful, wanton behavior." Am. Compl. ¶ 34 [fourth].

A

"To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App. 2005, no pet.). "[T]here is a broad consensus among Texas courts that such a claim requires that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices." *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (collecting cases). Texas courts apparently contemplate that the actionable tort committed by the agent can include torts other than simple negligence, such as assault or battery. *See Gonzales v. Willis*, 995 S.W.2d 729, 740 (Tex. App. 1999, no pet.). And "[a] negligence finding requires a duty,

breach, and damages proximately caused by the breach." *Wansey*, 379 S.W.3d at 248.

Generally, an employer is not liable for the negligent acts of an independent contractor, including those committed while the independent contractor is completing the job for which he was hired. *Sanchez v. Mbank of El Paso*, 792 S.W.2d 530, 531 (Tex. App. 1990), *aff'd*, 836 S.W.2d 151 (Tex. 1992). But there are exceptions to this principle, *id.*, and "Texas recognizes a cause of action for the negligent hiring of an independent contractor," *King v. Associates Commercial Corp.*, 744 S.W.2d 209, 213 (Tex. App. 1987, writ denied). Thus an employer "may be held responsible for the contractor's negligent acts if the employer knew or should have known that the contractor was incompetent and a third person was injured because of the contractor's incompetency." *Id*. A factor that is relevant in determining whether an employer was negligent in hiring an independent contractor is whether, and the extent to which, the employer investigated the applicant's qualifications before making a hiring decision. *Id*. "[T]he mere fact that an independent contractor negligently caused an injury to another affords no presumption that the employer was negligent in his selection of the contractor." *Id*. at 214.

This "knew or should have known" standard could also be characterized as one measuring foreseeability, and thus as an issue of proximate causation. *See, e.g.*, *Tex. Am. Bank v. Boggess*, 673 S.W.2d 398, 400 (Tex. App. 1984, pet. dism'd by agr.). *Boggess* involved a similar factual situation to the instant one: the plaintiff financed the purchase of a vehicle through a bank, and, when he defaulted, the bank hired a repossession agent, who contracted with a different individual to repossess the vehicle. *Id*. at 399. The plaintiff was

injured during the attempted repossession and sued the bank, the repossession agent, and the contractor. *Id.* The *Boggess* court concluded that there was no causation for several reasons. First, "[no] employee of the Bank was present at the time of the incident," nor was the individual whom the bank had hired—here, the repossession agent. *Id.* at 402. Further, "the Bank, up to the time of this occurrence, had never heard of [the contractor] and knew nothing of his employment by [the repossession agent]." *Id.* Finally, "even though the Bank did not inquire as to whether [the repossession agent] had a criminal record and did not look into his driving record, knowledge of these histories had nothing whatever to do with the accident and would not have prevented it." *Id.*

*Boggess* is distinguishable from the instant case, and Fuller alleges enough in his amended complaint to avoid the issues present in *Boggess*. For example, Fuller alleges that defendant The Car Source, LLC d/b/a Hide and Seek Recovery ("Car Source") had a history of using aggressive tactics when repossessing property. Fuller also alleges that consumers in other states made several public complaints about Car Source's methods. Fuller has therefore plausibly pleaded that CIG should have known that Car Source had used objectionable repossession practices in the past and that a reasonable inquiry into Car Source's qualifications likely would have revealed these practices. It can reasonably be inferred that when CIG hired Car Source, a repossession company, it understood that it would be necessary for Car Source to send a person—whether an employee or an independent contractor—to complete the repossession. The bank in *Boggess* had no knowledge that its repossession agent had delegated his obligations to another individual.

- 8 -

But it can reasonably be inferred in this case that CIG likely did know that a person such as Sims would be the one repossessing the vehicle on Car Source's behalf. And according to the amended complaint, a representative of CIG was on the phone with either Fuller or Sims for most of the time during which Sims was attempting to repossess the pickup truck. Each of these facts bolsters the conclusion that Fuller has pleaded a plausible cause of action against CIG for negligent hiring, supervision, or retention, or all three. Accordingly, the court denies CIG's motion to dismiss Fuller's negligent hiring, retention, and supervision claims against CIG, as alleged in count III.

B

The court next considers Fuller's independent claim against CIG for "willful, wanton behavior," alleged in count IV. CIG moves to dismiss this claim, contending that Fuller has not pleaded a stand-alone tort that states a separate claim.

In several contexts, courts have concluded that wanton and willful misconduct is akin to gross negligence. *See, e.g.*, *Turner v. Franklin*, 325 S.W.3d 771, 780-81 (Tex. App. 2010, pet. denied) ("the legislature intended 'wilful and wanton negligence,' as used in section 74.153 of the civil practice and remedies code [governing emergency medical care malpractice], to mean 'gross negligence.'"); *Warren v. Medley*, 521 S.W.2d 137, 139 (Tex. Civ. App. 1975, no writ) (owner of property owes licensee duty not to injure him by "willful, wanton, or gross negligence"); *Moncada v. Brown*, 202 S.W.3d 794, 799-800 (Tex. App. 2006, no pet.). But the two standards are not identical. *In re Tex. Pig Stands, Inc.*, 2009 WL 10703070, at *2 (W.D. Tex. May 21, 2009) ("In Texas, gross negligence is not the equivalent

- 9 -

of a willful act."). Rather, the Supreme Court of Texas has endorsed a "culpability continuum," *id*., so as not to "equate the terms gross negligence, 'knowingly,' 'willful' and intentional." *Luna v. N. Star Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex. 1984). On this continuum, "gross negligence [is] the lowest mental state and intentional [is] the highest." *Id*.

Since the Texas legislature engaged in extensive efforts to reform Texas tort law, the term that has emerged as a synonym for these higher standards of culpability—"willful" and "intentional," for instance, *id*.—is "malice." *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 41.001 (West 2015) (defining "malice" as "a specific intent by the defendant to cause substantial injury or harm to the claimant"). This is important because state law dictates that "exemplary damages," defined by statute to include punitive damages, *id*., "may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." *Id*. § 41.003(a).

The terms "malice" and "wanton and willful" have been conflated or likened to one another by Texas courts. *See, e.g.*, *Musselwhite v. Howard*, 2007 WL 1412854, at *8 (Tex. App. May 10, 2007, no pet.) (mem. op.) ("Malice is defined as 'ill will or evil motive, or such gross indifference for the rights of others as to amount to a knowing, unreasonable, wanton, and willful act."); *Marin Real Est. Partners, L.P. v. Vogt*, 373 S.W.3d 57, 91 (Tex. App. 2011, no pet.) ("A person acts with malice in a malicious prosecution case when he acts . . . in reckless disregard of the rights of another and with indifference as to whether the other

person is injured so as to amount to wanton and willful action knowingly and unreasonably done.").

Thus Texas courts generally regard "wanton, willful behavior" as simply a level of culpability that exceeds ordinary negligence, and, if proved, can entitle the plaintiff to an award of exemplary damages. In this way, it is meaningfully similar to other types of heightened culpability, such as gross negligence and malice. And while Fuller alleges "willful, wanton behavior" in two counts (counts IV and VI[3]) of his amended complaint, "[p]laintiffs need not expressly plead a separate cause of action sounding in gross negligence to pursue exemplary damages." *Adams v. Medtronic, Inc.*, 2022 WL 1024803, at *9 (E.D. Tex. Mar. 3, 2022). Indeed, "[i]n Texas, gross negligence is not a separate cause of action apart from negligence." *Rodgers v. City of Lancaster Police*, 2017 WL 457084, at *17 (N.D. Tex. Jan. 6, 2017) (Ramirez, J.) (internal quotation marks omitted). "Rather, the degree of negligence characterized as gross negligence is relevant only to a recovery of exemplary damages." *RLI Ins. Co. v. Union Pac. R.R. Co.*, 463 F.Supp.2d 646, 649-50 (S.D. Tex. 2006).

Here, Fuller pleads two counts alleging negligence (counts III and V[4]) and two alleging wanton, willful behavior (counts IV and VI). It is unnecessary, however, to plead

---

[3]Count IV is asserted against CIG, and count VI is pleaded against Car Source and Sims.

[4]Count III is asserted against CIG, and count V is asserted against Car Source and Sims.

wanton, willful behavior as a separate claim because such behavior does not constitute an independent tort; instead, the allegations made in counts IV and VI are "relevant only to a recovery of exemplary damages." *Id.* Accordingly, the court grants CIG's motion to dismiss count IV of Fuller's amended complaint.

V

The court next considers CIG's motion to dismiss Fuller's battery claim alleged in count VIII.

A

"[A] battery is committed when an individual actually sustains a harmful or offensive contact to his or her person." *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014) (discussing the distinction between assault and battery, which are "related, but conceptually different" torts). Thus in Texas "[t]he elements of battery under common law are (1) a harmful or offensive contact (2) with a plaintiff's person." *Jackson v. Tex. S. Univ.*, 997 F.Supp.2d 613, 632 (S.D. Tex. 2014). But in Texas, "it has long been settled that there can be a battery without an assault," meaning "that actual physical contact is not necessary to constitute a battery." *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 629 (Tex. 1967).

Although "[r]eliance on the criminal-assault statute has led several Texas Civil courts to meld common-law concepts of assault and battery under the rubric of assault," the Supreme Court of Texas has expressly recognized the two forms of civil battery identified in the Second Restatement of Torts. *City of Watauga*, 434 S.W.3d at 589-90. They are akin

to the first and third definitions of battery provided in Texas' criminal assault statute, *id*., which states:

> [a] person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; . . . or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

Tex. Pen. Code Ann. § 2201(a) (West 2021).

Battery is therefore an intentional tort, but "specific intent to injure is not an essential element of a battery." *City of Watauga*, 434 S.W.3d at 592. "That the defendant intends bodily contact that is offensive is enough." *Id*. at 593 (internal quotation marks omitted). Thus accidental injuries can be the ultimate result of a battery. *Id*. "Although . . . intent may be pleaded generally, legal conclusions, elements of a cause of action and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Zytax, Inc. v. Green Plains Renewable Energy, Inc.*, 2010 WL 2219179, at *6 (S.D. Tex. May 28, 2010) (Rosenthal, J.) (internal quotation marks omitted).

Additionally, "an employer may be vicariously liable for an intentional tort when the act, although not specifically authorized by the employer, is closely connected with the employee's authorized duties, that is, if the intentional tort is committed in the accomplishment of a duty entrusted to the employee." *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex. App. 2003, no pet.). But an employer is liable for the actions of an independent contractor only "if the employer controls the details or methods of the

independent contractor's work to such an extent that the contractor cannot perform the work as it chooses." *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 792 (Tex. 2006).

B

Fuller's amended complaint alleges a plausible battery claim. He asserts that Sims, while acting on behalf of his principal, caused Fuller's pickup truck to move suddenly and violently, and that this movement caused abrasive contact between Fuller and parts of the truck, which Fuller occupied at the time. Fuller alleges that Sims intended to move the truck in this manner. It is irrelevant that Sims did not intend to injure Fuller. *See City of Watauga*, 434 S.W.3d at 592. And because Fuller has adequately pleaded an agency relationship among the three defendants, he has plausibly pleaded a battery claim against CIG. CIG's motion to dismiss Fuller's battery claim is therefore denied.

VI

Finally, the court considers CIG's motion to dismiss Fuller's IIED claim.

A

Texas courts have "adopted the Restatement's formulation of intentional infliction of emotional distress." *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993)). "[T]o recover damages for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Id*. (internal quotation marks omitted) (quoting

*Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995)). Conduct is extreme and outrageous if it goes "beyond all possible bounds of decency" and is "regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621 (quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law Inst. 1965)). "Whether a defendant's conduct is extreme and outrageous is a question of law." *Williams v. Northrop Grumman Vought*, 68 S.W.3d 102, 113 (Tex. App. 2001, no pet.).

IIED is "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). Thus "[w]here the gravamen of the plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* (collecting cases, including those involving claims of negligence, gross negligence, and assault and battery). Ultimately, "[p]roperly cabined, the tort [of IIED] simply has no application when the actor intends to invade some other legally protected interest," whether it be one protected by the law of torts or by statute. *Id.* (internal quotation marks omitted). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005).

B

Fuller has asserted several causes of action in addition to his IIED claim. The conduct that Fuller alleges constitutes IIED is identical to that which purportedly constitutes negligent hiring, retention and supervision, battery, and violations of various statutes. The "gravamen" of Fuller's complaint is another cause of action (or several). *Id*. Fuller does not allege any additional or separate acts on the part of any defendant that would give rise to a claim of IIED independent and apart from his other causes of action. *See Tillison v. Trinity Valley Elec. Co-op., Inc.*, 2005 WL 292423, at *2 (N.D. Tex. Feb. 7, 2005) (Fitzwater, J.). Therefore, the court grants CIG's motion to dismiss Fuller's IIED claim.

VII

CIG moves in the alternative under Rule 12(e) for a more definite statement of Fuller's battery claim. CIG maintains that Fuller's amended complaint "allege[s] facts that are so vague and ambiguous that CIG cannot assess which specific, recognized civil assault claim is being asserted against it." D. Mot. Dis. at 14. CIG posits that it is impossible to "prepare or file a response to Plaintiff's 'Battery' claim." *Id*.

A

"A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper L. Enf't, LLC*, 917 F.Supp.2d 611, 621 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting Rule 12(e)). "When a party moves for a more definite statement under Rule 12(e), the court is granted discretion to determine whether the complaint is so

vague that the moving party cannot reasonably be required to frame a responsive pleading." *Chapman v. Dall. Cnty. Cmty. Coll. Dist.*, 2006 WL 3442057, at *4 (N.D. Tex. Nov. 29, 2006) (Fish, C.J.) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (Fitzwater, C.J.) (internal quotation marks omitted). "Motions for a more definite statement are generally disfavored." *Id*.

B

The court concludes that Fuller's battery claim is not so vague that CIG cannot reasonably be required to frame a responsive pleading. Fuller has pleaded a plausible battery claim against CIG. And he has included sufficient detail in his amended complaint to enable CIG to respond to that claim, despite the fact that the amended complaint does not expressly identify the type of battery alleged. For purposes of this claim, there are only two types of battery that Texas courts recognize: that committed with intent to injure, and that committed with intent to cause bodily contact that is offensive. *See City of Watauga*, 434 S.W.3d at 590. Fuller does not plead intent to injure. But he does allege that Sims purposely connected Fuller's vehicle to Sims's tow truck, lifted the vehicle, and "punched the gas" in a way that caused bodily contact with Fuller. Am. Compl. ¶ 32 [eighth]. Fuller also alleges that this bodily contact was offensive, although he employs different adjectives to characterize it. To

- 17 -

the extent that CIG seeks a more definite statement based on Fuller's failure to identify specific details of his injuries, evidence of Sims's intent, and similar issues, that information can be "clarified and developed during discovery." *Johnson*, 2012 WL 5903780, at *4. Fuller's allegations are adequate to permit CIG to respond to the battery claim. Accordingly, CIG's alternative motion for a more definite statement is denied.

\* \* \*

For the reasons stated, CIG's motion to dismiss is granted in part and denied in part, and CIG's alternative motion for a more definite statement is denied.

**SO ORDERED**.

January 10, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE