IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

EDRICK FULLER,                                    §
                                                  §
        Plaintiff,                                §
                                                  §
v.                                                §        Civil Action No.: 3-22-cv-1289-D
                                                  §
CIG FINANCIAL, LLC, AND THE CAR                   §
SOURCE, LLC d/b/a "HIDE AND SEEK                  §
RECOVERY,"                                        §
                                                  §
        Defendants.                               §

## RESPONSE TO DEFENDANTS CIGS MOTION FOR SUMMARY JUDGEMENT

## INTRODUCTION

On January 9, 2019 Plaintiff Edrick Fuller  visited Jeno AutoPlex looking to purchase a truck for work. Plaintiff test drove and put $1500 cash down on a 2013 Ford F-150. Plaintiff asked about the mileage and hitch that was connected to the truck when he returned from the test drive. Plaintiff was told the mileage was due to freeway miles and the hitch was there because the truck was hooked to an RV when they received it, and that the last owners were travelers. Plaintiff informed that he would only take the truck with a warranty outside of the 2 year Free Maintenance warranty sticker that was already on the window.(See Exhibit 3)

Plaintiff wanted a warranty on the Truck itself. They agreed to a 90 day warranty. (See Exhibit F, last page of warranty)The employee for Jeno AutoPlex informed Plaintiff that he had to get full coverage insurance with a 500 deductible before he could take the truck. Plaintiff called and got insurance on the truck over the phone and was told to bring the Truck in for pictures as soon as I left the dealership. Plaintiff signed the contract for the truck and a warranty for 90 days. All this was done on January 9, 2019. *(See Exhibit 2, Exhibit 2A, Exhibit 2B) Plaintiff never returned to Jeno Autoplex until March 2019. In March of 2019 while on a route for work, Plaintiff's truck ran hot and stopped. Plaintiff had the truck towed to a Jiffy Lube in Plano, showed the sticker that was previously on the window when I got the truck, and that they were on the list I was given to go for free maintenance for 2 years. He ran the Plan and said the Plan does not exist and that Jeno Autoplex was nowhere in their system. Plaintiff tried to call Jeno Autoplex while there but was not getting an answer. So Plaintiff had Triple A to take it to his house. Plaintiff Continued to call Jeno Autoplex without an answer. Once Plaintiff got home, he borrowed a car and drove to Watuga, TX where Jeno Autoplex was located. Upon arrival, Plaintiff saw that the parking lot that was once full of nice cars was empty. The Dealership was closed. Plaintiff got out of the car and went to the door to read the signs, and one sign read "Closed For Personal Reasons". Plaintiff asked a

person that I saw who was nearby and asked if he knew why they had closed, he said they had been caught scamming people.

Plaintiff called CIG and informed them of the broken down truck and about the warranty and free 2 year maintenance that came with the truck. They said they did not have a warranty and knew nothing of the 2 year free maintenance. Plaintiff informed them that he could not pay for the truck to be fixed plus the note one the truck and Insurance. Not only that, Plaintiff also told them he did not have the money to pay for the truck to be fixed. The Ford dealership was asking almost $1300 to replace the radiator that had been previously repaired with some kind of stop leak and the problems that it caused. Plaintiff informed CIG that he would not pay March but instead get the truck fixed. They understood and agreed that I get the truck fixed. Plaintiff found another shop that could have it fixed for 700.

During this time, Plaintiff route was being subbed by another Independent contract driver. The goal for the Independent contract driver that I work around is to get what we call a permanent route, permanent route means the route you run everyday, it's your route to run. If you cannot  make it, the person you get your route through will find a substitute to run it for you, but you lose the permanent tag after a two week absence and would have to sub again until you can get a permanent route. Substituting is part time, a driver only gets to sub when someone has to miss a day, which is not that often.

Plaintiff Ended up losing his route but was able to sub for other days with a borrowed truck, and was able to pay April's note even though the truck was still giving Plaintiff problems. When it came time for the note to be paid in May Plaintiff informed them that he would not be able to pay this time, he needed to get the truck completely fixed, they agreed again to get the truck fixed first. The time for June payment came and the truck was now fixed and Plaintiff informed CIG that he needed to make the money to pay, and that's when they told me they would have to repossess it if I do not pay. Plaintiff asked them would they give him his money back since the reason he could not pay was that he bought the truck for work and the truck had broken down and had to be fixed out of Plaintiffs pocket. Their answer was no, they would not return the money. June 2019, Plaintiff did not pay, July 2019, Plaintiff was not able to make enough money to pay the note in full and we agreed I send a partial payment. August 2019, Plaintiff did not pay. During this time CIG knew Plaintiff was only subbing for work and was waiting on a permanent route to open up.

August 2019, Plaintiff gets into a fender bender backing out of a store parking lot where a driver saw an opportunity as Plaintiff was reversing to cause plaintiff to back into him. Plaintiff ended up damaging the bumper and the full coverage insurance that Plaintiff had on the truck sent Plaintiff a check for a little over $900 after the $500 deductible to have it repaired in September 2019. Plaintiff could not

cash the check without CIGS signature since they were lien holders to the title. Plaintiff sent the check to CIG unsigned and told them to sign it and send it back. They did not send it back, they somehow cashed it without Plaintiff's signature and told him it was added to his account.

October 2019, Plaintiff calls CIG to inform them that he now has a permanent route again and wants to know where his account stood. Plaintiff was informed that the $900 plus was added to his principle and that he was still behind on his payments. Plaintiff disagreed and said that it should have been added to his monthly payments instead which would have caught him up at least two months. They said they would see what they could do. Plaintiff informed them that he would be getting paid every 2 weeks on the 14th and 30th of each month. Plaintiff got a call back with them informing me on a two month deferment agreement. Plaintiff agreed and told them to send him the paperwork to sign. They sent the paperwork and it stated that I would pay starting October 15, 2019. (See Exhibit 10) Plaintiff did not sign it, but instead called CIG back and told them I would not be able to make the Car note payment on the 15th, for two reasons, the first was that I did not work enough days the previous pay period to have a full check. and the second reason was that I needed to use the first check to handle more important bills. We agreed that I would pay the notes on the second check at the end of the

month to make it better for Plaintiff, but they never sent another agreement changing the date. Plaintiff paid $439.68 on October 31, 2019.

Same as during October, during November CIG kept sending emails talking about a charge off when we have just gotten off of the phone and them knowing the situation. Plaintiff did not understand and even confronted them about this. They were saying it was something they were required to do even with our conversations. For the second pay period of November for Plaintiff, he knew he would not have enough coming on the check to pay the full $432.68 November 29, Plaintiff called and informed CIG that he would not have enough for the full payment. The employee for CIG asked how much he would have, and Plaintiff told him he would have $340. November 30, 2019 A CIG employee emailed to give him a call. (See Exhibit 5)Plaintiff called back and they said they were going to lower Plaintiffs payment each month from $432 to $380 Plus the $7 service fee and would I be able to come up with $387. Plaintiff said yes and could he pay with different cards. Plaintiff stated that he had $347 on one card and $40 on another, and he would borrow $40 from his mother from another card. Plaintiff was then given directions on how to pay and he paid it. Afterwards, Plaintiff was sent an email stating that the payments from the cards with the payments of $340 and $7 were accepted, but that the payment for $40 was not because it was a Credit Card.(See Exhibit 6) I informed my mother that the card she gave me was a credit

card, she said oh, she gave me the wrong one and handed me a debit card. Plaintiff paid the $40 with the debit card. Plaintiff paid $387 November 30, 2019. The note for December 30th Plaintiff knew he would be able to make, but the checks did not come out on time due to a settlement report filed by the Contractor who pays everyone because his amount was short. After Plaintiff saw that the issue would not be resolved until the next day, Plaintiff told the contractor to send him 400 so he could pay his note because the people sent him an email about a charge off again for December 31, at 12:00 pm and he wanted to go ahead and pay them before the deadline(See Exhibit 7). He agreed to send it but did not send it right then. He did not send it till early the next morning when he called and told me he wanted me to run another route for him that day that would pay more. He sent the money by the time I got in my truck that morning to warm it up. Plaintiffs truck was parked in the driveway unblocked or anything because he had no intentions that his truck was being repossessed that day. As Plaintiff was sitting waiting to be called back and told where to go, Plaintiff kind of dozed off a little and was woken up by a deep humming sound and then his truck being lifted. Plaintiff immediately started blowing the horn and flickering the lights on and off to let the tow truck driver know he was in the vehicle.

## FACTUAL BACKGROUND

Plaintiff's Amended Complaint at law alleged violations of the FDCPA, DTPA, TDCA, and multiple Texas torts. Defendants have now moved for summary judgment on all of Plaintiff's claims on the basis that Defendants had a present right to possession because Plaintiff was in default under the terms of his retail installment contract and that CIG Financial LLC had a valid security interest in Plaintiff's vehicle. An already ruled statute of limitations defense, Liability and Damages.

### Response to CIGS Arguments

### A. The Statute of Limitations Bar Plaintiff's Claims Except TDCA, and Equitable Tolling Does Not Apply Here.

Response: The Judge has already made a ruling on this, (id) and CIG does not provide any new arguments. (See doc 24:)


**B. Alternatively, CIG is entitled to summary judgment on Plaintiffs' claims because the evidence clearly shows that CIG actually hired another company, CARS (a nonparty), and not Hide or Seek, to repossess Plaintiff's Vehicle, and that CARS had delegated the repossession of the Vehicle to Hide & Seek without CIG's prior knowledge or consent. Therefore, CIG is not vicariously liable for Plaintiff's alleged damages caused by the actions of Hide & Seek's driver at the day of the Incident.**

Response: On October 27,2019 Plaintiff moved to strike the Defendant's

Supplemental Initial Disclosure of adding Consolidated Asset Recovery System,

Inc. who they allege is a non-party to this suit and responsible third-party who is

liable to CIG or to Plaintiff as a witness. The Defendant's Supplemental Initial

Disclosures, was submitted to Plaintiff after the Stipulated August 31, 2022

deadline for Initial Disclosures by both parties. Defendants emailed Plaintiff asking

would he agree to a Stipulate a deadline from August 5, 2022 to submit Initial

Disclosures that were not submitted yet by all parties. Plaintiff messaged back

stating he had submitted his Initial disclosures at the time of filing his complaint.

There was a back and forth and still Defendants said it was not, so Plaintiff agreed

to Stipulated Initial Disclosure agreement anyhow, not knowing what they were

talking about. Plaintiff saw their Initial disclosures submitted August 31, 2022 and

saw it was basically the same that I told them that I already submitted, except they

added the federal rules. Defendants stated they wanted a full computation of the

damages instead of the bare 1.5 million number that I asked for at the filing of the

complaint. Plaintiff understood and submitted as well. Defendants supplementing

their Initial Disclosures in a timely fashion a short time after and well before the

Discovery deadline giving Plaintiff time to respond and adjust would have been

accepted. Defendants supplementing their Initial Disclosures October 13, 2023, 14

months Past the deadline for filing such disclosures and well after the Discovery

Deadline, and with only two weeks left before Summary Judgement, Surprises and

Prejudices Plaintiff. 2. The Defendant's untimely disclosure has left the Plaintiff

with inadequate time to explore the nature of the additional non-party who could

also be held liable, and whom Defendants seek to shift their liability to, 2 weeks

prior to the November 1, 2023 Summary Judgement deadline. In light of the above

reasons, Plaintiff respectfully requests that the Defendant's Supplemental

Disclosure of adding Consolidated Asset Recovery System, Inc as a non-party

Witness be stricken.


**C. CIG is entitled to summary judgment on Plaintiffs' remaining claims**

**against CIG for violations of the FDCPA, TDCA, and Tex. Fin. Code §**

**392.301, negligence, or battery because Plaintiff's alleged damages was not**

**foreseeable or reasonably anticipated when CIG hired CARS to repossess to**

**the Vehicle.**

Response: CIG contends that CARS is liable for plaintiffs damages. *See MBank El*

*Paso, N.A. v. Sanchez, 836 S.W.2d 151, 153 (Tex. 1992)* (interpreting predecessor

statute). Thus, the creditor who elects to pursue nonjudicial repossession assumes

the risk that a breach of the peace might occur. Id. at 154. A secured creditor

"remains liable for breaches of the peace committed by its independent contractor."

Id. (citing Restatement (Second) of Torts, Precautions Required by Statute or

Regulation, § 424 (1965)). Thus, a creditor cannot escape liability by hiring an independent contractor to repossess secured property.

*Clark v. Associates Commercial Corp., 877 F. Supp. 1439 (D. Kan. 1994)*

Thus, the court holds that "[a] creditor cannot escape the duty of peaceable repossession by delegating it to an independent contractor," whether an independent contractor in the first instance or an independent contractor once removed. Sanchez, 836 S.W.2d at 153. Holding otherwise would encourage repossessing creditors to simply stack independent contractors between it and the debtor, thereby insulating the creditor from liability. Further more, CIG does not provide any new arguments from the Motion to dismiss that has already been ruled on.

**D. Plaintiff has no or insufficient evidence of his alleged damages, including "injuries of a personal and pecuniary nature, … stress, anxiety, and emotional distress," or punitive damages.**

All that Plaintiff has submitted to CIG through his Initial Disclosures and Discovery request is sufficient evidence of Plaintiff's damages, including "injuries of a personal and pecuniary nature, … stress, anxiety, and emotional distress," and punitive damages. Their whole scam on Plaintiff has damaged Plaintiff's life. Plaintiff is on probation and would have had it completed if not for being mysteriously and surprisingly removed from a class he was required to complete

on allegations of being disrespectful and behind on fees. Plaintiff thought the

Instructor had turned on him and had something against him for reporting these

things without notifying him or warning.(See Exhibit 9) Plaintiff Paid $350 to start

the class and told the Instructor to inform him when he needed to pay again. See

Exhibit. Plaintiff now believes CIG Attorneys and their Dallas connections to the

legal system had something to do with that. Why else would they mention or bring

up that instance? It all makes sense now, CIG may have also had a hand in the

bogus charges brought against Plaintiff. Which can explain when Plaintiff was

arrested from his home of the extra effort to impound Plaintiff's truck that was in

the backyard. Plaintiff asked what was taking so long after being arrested, and the

officer stated that they were trying to see if they could get the truck as well.

Plaintiff asked why, he said he did not know, but he knows they can not do it since

I was not in the truck when arrested. Also, CIGs charge off on Plaintiff's account

caused a negative impact on Plaintiff's credit score causing the denial of an EDIL

Loan. After a few months of applying for the EIDL it became widely reported that

a credit score of 540 would get approval of a loan, even with any type of missed

payments or collections.The only thing that could deny the loan was any kind of

negative charge off. The wait for the approval or denial of the loan caused Plaintiff

Financial problems during covid when work was hard to come by. The financial

problems also led to relationship problems with my daughter's mom causing

Plaintiff to be arrested. Plaintiff could have easily defended himself of actual physical contact if the full video of the incident was provided during discovery. The video would have also justified Plaintiff's actions to any normal human being. Plaintiff was prejudiced, only the clip of him leaving was provided and told that was all they had. Plaintiff just agreed to probation and the stipulations in order to move on with his life. No one cared about the cause and the truth, they just only wanted to convict the plaintiff because he was confident he would prevail once the video was shown. If CIG and their attorneys do not consider what Plaintiff went through to be damaging, then they really are the Monsters that Plaintiff has come to believe they are. Plaintiff can not get over the fact that they have hacked his computer and email account. Something that will be expressed in more detail in Plaintiff's response to The Car Sources Motion for Summary Judgement.

**E. Alternatively, or additionally, Plaintiff's own fault, or his intentional actions, negligence, or omissions caused his alleged damages.**

On January 9, 2019 Plaintiff signed an installment contract with Jeno Autoplex. (See Exhibit 1). The Installment contract that Plaintiff received is not the same that CIG has provided (See doc 60 Exhibit A-1(App. 5-11). Plaintiff has never seen the contract that CIG has provided that states it was executed on January 16,2019, nor are those Plaintiffs signatures signed by him.CIG was not on the Installment

Contract that Plaintiff signed, which is why plaintiff stated in the status report concerning jury trial that the contract was between the buyer and seller not the third party assignee because CIG was not on Plaintiffs installment Contact. (see doc 33 pg 11)Plaintiff has always believed that CIG acquired Plaintiff's note through some type of contract transfer that had nothing to do with him. Another Company called Coastal Credit LLC was on Plaintiff's contract.(See Exhibit 1E) More evidence is that Plaintiff had to get full coverage insurance while there before he could leave. The Insurance card was issued on the 9th of January 2019, also proving Plaintiff signed his contract January 9, 2019, not January 16, 2019. Also to add, CIG was not even the Finance company name given for the insurance, the name on Plaintiffs insurance given by the dealer to the insurance company when they talked was Premium Finance Company.(see Exhibit 2).  Plaintiff contacted Jeno Autoplex February 8 2019 asking who to pay the note to. They said I would get a call back. CIG called back that same day informing Plaintiff they were who I would be paying the note to and gave me instructions on how to pay it online. Plaintiff paid the next day, February 9, 2019 on time. (See Exhibit 4) CIGS installment Contract provided is a fraud document with plaintiffs forged signature created to fit their narrative that Plaintiff was in default of his contract with them. Accordingly, in *O'Brien v. Phillips Motors Excelsior, Inc.*, 288 Minn. 183, 179 N.W.2d 158 (Minn. 1970), Affirming trial court's judgment in favor of buyer in

"non-signature" claim because seller did not furnish customer with copy of

installment sales contract. Texas Finance Code § 348.101. states,

RETAIL INSTALLMENT CONTRACT GENERAL REQUIREMENTS.

  (a) A retail installment contract is required for

each retail installment transaction.  A retail installment contract

may be more than one document.

        (b)  A retail installment contract must be:

                (1)  in writing;

                (2)  dated;

                (3)  signed by the retail buyer and retail seller;  and

                (4)  completed as to all essential provisions before it

is signed by the retail buyer except as provided by Subsection (d).

*O'Brien v. Phillips Motors Excelsior* holds that:

The plain purpose of the provision is to inform the installment buyer of the cost of

the credit extended to him, even though it falls short of expressing that cost in

terms of a more understandable annual percentage rate.

Enforcement of that particular requirement is achieved by civil remedies

 In case of an intentional failure to comply with any provision of sections, the

buyer shall have a right to recover from the person committing such violation, to

set off or counterclaim in any action by such person to enforce such contract an

amount as liquidated damages, the whole of the contract due and payable, plus

reasonable attorneys' fees.

By CIG not being on the Installment contract provided to Plaintiff, CIG cannot use

the defense that plaintiff was in default or any defense against any of plaintiffs

claims that refers to the contract. Furthermore, Plaintiff was not in Default. In

October we had just made an agreement to defer the two payments that Plaintiff

was behind. Plaintiff Last payment on November 30, 2019 was not a partial

payment but an agreed new amount to pay of $380 + $7. After these agreements,

CIG should not have continued to try and repossess and Charge off on Plaintiffs

Account. Accordingly, in re Krueger, 192 F.3d 733, 738 (7th Cir. 1999) (quoting

Barker v. Leonard, 635 N.E.2d 846, 848 (Ill. App. Ct. 1994)). Specifically, [w]here

a party accepts late payments it may waive or suspend its right to timely payments

and its right to declare a forfeiture unless the buyer is given a definite and written

notice of the intention to require strict compliance with the contract in the future . .

. To reestablish strict compliance, the notice must give a reasonable time for

performance, and what is a reasonable time depends on the facts in the case. City

of Chicago v. Chicago Title & Trust Co., 563 N.E.2d 65, 70 (Ill. App. Ct. 1990)

(quoting Allabastro v. Wheaton National Bank, 395 N.E.2d 1212, 1217 (Ill. App.

Ct. 1979)). The failure to make payments within the contract time may be waived

by the receipt and acceptance of overdue payments. Where the time fixed by the

contract for performance is permitted to pass, both parties concurring, the time of

performance thereafter becomes indefinite, and one party cannot rescind until full

notice and a reasonable time for performance is given. Romualdo P. Eclavea, et al.,

Waiver of Delay: Generally, 12A Ill. Law and Prac. Contracts § 279 (2016).

Plaintiff was sent an email December 30, 2019 at 11:21 am stating Please contact

CIG FINANCIAL 949-271-4248. Your account will be CHARGE OFF tomorrow

@ 12:00 pm (See Exhibit 7 ). They already Knew I got paid on the 30th and

Plaintiff figured that the email was just a reminder that he had until the 31 to pay.

The payment History that CIG provided is also a fraudulent document. Plaintiff

paid his note the first three months. Also, plaintiff paid a total of $387.00 with 2

different cards that is not reflected on plaintiffs payment on November 30, 2019.

See Exhibit 6) In light of the above reasons, Plaintiff respectfully requests that the

Defendant's Payment History be stricken for being a false edited document.


Extended Facts

CIG also submitted the phone conversations made December 31, 2019. If the Judge

reviews closely, the times do not match the police report, CIGs hours of operation,

nor is it an actual transcript of the recordings. (see doc 60: Exhibit A-3:App. 14-16)

Instead it is a custom explanation of the recordings, using the term "He" and

describing what Plaintiff said, and not what he actually said. The phone transcript

was falsely modified to fit CIGS narrative of not being liable and to undermine the

courts judgment, which is not admissible. The Declaration of this false submission

was also submitted in bad faith which should call for a sanction. Fed rule 56 (h)

states:

**Affidavit or Declaration Submitted in Bad Faith**. If satisfied that an affidavit or

declaration under this rule is submitted in bad faith or solely for delay, the court –

after notice and a reasonable time to respond – may order the submitting party to

pay the other party the reasonable expenses, including attorney's fees, incurred as a

result. An offending party or attorney may also be held in contempt or subjected to

other appropriate sanctions.  In light of the above reasons, Plaintiff respectfully

requests that the Defendant's Loan Comment report for Plaintiff on December 31,

2019 be stricken.

Defendants also submitted a Deposition transcript from a Stenographer. (see doc

60: Exhibit B:App. 17-59) We are in 2023 where everything can be video recorded,

Stenographers are an automatic prejudice. At the first break during deposition

Plaintiff asked what she was typing on, because it did not have buttons, symbols

and letters like a typewriter but she was typing after every word as if it did. As she

was explaining how it worked, the first thing that came to plaintiffs mind was,

what kind of sorcery is this! A short handed typing machine used by a woman old

enough to be Plaintiff's mother reeks prejudice all over it. Plaintiff is 43 years old.

After reading the transcript provided and seeing all mistakes and frauds committed

by Stenographer and editing of Plaintiff's answers or answers made

incomprehensible, Plaintiff was sure of the prejudice this method of recording

provided. Defendants also used Steno to hack Plaintiffs computer with a phishing

email. (See Exhibit 8-8B) This Hacking provided the Defendants the ability to

remotely log on to plaintiffs computer, go into his email account and erase his

discovery response sent to The Car Source. I guess desperate times call for

desperate measures. Plaintiff has not forgotten to submit anything. Plaintiff has

spent the past 3 weeks trying to figure out how his computer was hacked. And if

you seek you shall find.  In light of the above reasons, Plaintiff respectfully

requests that the Defendant's Deposition Transcript be stricken for being edited.

CONCLUSION

For these reasons, Plaintiff Edrick Fuller, respectfully requests the Court to deny

Defendants CIG Financial LLCs Motion for summary judgment.


Respectfully submitted,
s/ Edrick Fuller
Edrick Fuller
1906 Berwick
Dallas, Tx 75203
214-941-1125
edricfuller@my.untdallas.edu

CERTIFICATE OF SERVICE

     I hereby certify that on November 27, 2023, electronically filed this document with the U.S. District Court for the Northern District of Texas and, through the electronic filing system, a copy of the foregoing document was served on the following counsel and parties of record:

Farrah I. Ahmed
State Bar No. 24071934
fahmed@thompsoncoe.com
700 N. Pearl Street, 25th Floor
Plaza of the Americas
Dallas, Texas 75201
Telephone: (214) 871-8200
106 Ex. A at ¶ 22 (App. 3); Ex. A-2 (App. 12-13).30
Facsimile: (214) 871-8209
ATTORNEY FOR DEFENDANT
CIG FINANCIAL LLC

Hessam Parzivand
The Parzivand Law Firm, PLLC
10701 Corporate Dr., Suite 185
Stafford, Texas 77477
Email: hp@parzfirm.com
Attorney for Defendant The Car Source LLC
/s/Farrah Ahmed
Farrah I. Ahmed, Esq.

                                          /s/Edrick Fuller
                                          Edrick Fuller

Exhibit 1

## ‖LAW 553-TX-ARB-eps 4/18

### MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

Dealer Number **P110553**        Contract Number _____

| | |
|---|---|
| BUYER **EDRICK FULLER** | SELLER/CREDITOR **JENO AUTOPLEX** |
| ADDRESS **1906 BERWICK** | ADDRESS **6301 DENTON HWY** |
| CITY **DALLAS**   STATE **TX**   ZIP **75203** | CITY **FORT WORTH**   STATE **TX**   ZIP **76148** |
| PHONE **(214) 941-1125** | PHONE **(817) 281-9911** |

| |
|---|
| CO-BUYER _____ |
| ADDRESS _____ |
| CITY _____   STATE _____   ZIP _____ |
| PHONE _____ |

The Buyer is referred to as "you" or "your." The Seller is referred to as "we" or "us." This contract may be transferred by the Seller.

**PROMISE TO PAY:** The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in this contract. By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments in U.S. funds according to the Payment Schedule in this contract. If more than one person signs as a Buyer, you agree to keep all the promises in this agreement even if the others do not.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

### VEHICLE IDENTIFICATION

| | | | | | |
|---|---|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | ☐ NEW<br>☐ DEMONSTRATOR<br>☐ FACTORY<br>OFFICIAL/EXECUTIVE<br>☒ USED | USE FOR WHICH PURCHASED<br>PERSONAL, FAMILY, OR HOUSEHOLD, UNLESS OTHERWISE INDICATED BELOW<br>If either of the boxes below is checked, Chapter 353 of the Texas Finance Code applies to this Contract.<br>☐ BUSINESS OR COMMERCIAL<br>☐ AGRICULTURAL |
| 2013 | FORD TRUCK | F150 PICKUP | 1FTFX1CF0DFA46085 | | |

Trade-in: Make _____        Model _____
Year _____   VIN _____        License No. _____

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ **1500.00** |
|---|---|---|---|---|
| **21.9000** % | $ **7969.01** | $ **14650.00** | $ **22619.01** | $ **24119.01** |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| **51** | **443.51** | Monthly beginning **02/08/19** |
| | | |
| | | |

Or as follows

**Late Charge:** If we do not receive your entire payment within ___15___ days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of ___5%___ of the scheduled payment.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** We will have a security interest in the vehicle being purchased.
**Additional Information:** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

**SELLER'S DISCLAIMER OF WARRANTIES**
Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation: Guía para compradors de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**APPLICABLE LAW**
Federal and Texas law apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

This PROVISION applies to this contract only if the vehicle financed in the contract was purchased for personal, family, or household use.

Buyer Signs X _~Edrick Fuller~_        Co-Buyer Signs X _____        LAW 553-TX-ARB-eps 4/18 v1    Page 1 of 6

Exhibit 1B.

| ITEMIZATION OF AMOUNT FINANCED | | |
|---|---|---|
| 1 Cash Price (including any accessories, services, taxes, | | |
| $N/A  Sales Tax  $935.02 | | |
| $N/A  and  $N/A ) | $ | 15895.30 (1) |
| 2 Total Downpayment = (If negative, enter "0" and see Line 4A below) | | |
| Gross Trade-In | $ | N/A |
| – Pay Off Made By Seller | $ | N/A |
| = Cash Paid to Buyer for Trade-In | $ | N/A |
| = Net Trade-In | $ | N/A |
| + Cash | $ | 1500.00 |
| + Mfrs. Rebate | $ | N/A |
| + Other (describe) _____ | $ | N/A |
| + Other (describe) _____ | $ | N/A |
| + Other (describe) _____ | $ | N/A |
| + Other (describe) Trade-In Credit Agreement Benefit | $ | 1500.00 (2) |
| Total Downpayment | $ | 1500.00 (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | $ | 14395.30 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf | | |
| (Seller may keep part of these amounts.): | | |
| A Net trade-in payoff to _____ N/A | | N/A |
| B Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | |
| Life  $ N/A | $ | N/A |
| Disability  $ N/A | $ | N/A |
| C Other Optional Insurance Paid to Insurance Company or Companies | $ | N/A |
| D Official Fees Paid to Government Agencies | | |
| 1) to  N/A  for  N/A | $ | N/A |
| 2) to  N/A  for  N/A | $ | N/A |
| 3) to  N/A  for  N/A | $ | N/A |
| E Debt Cancellation Agreement Fee Paid to the Seller | $ | N/A |
| F Dealer's Inventory Tax (if Not Included in Cash Price) | $ | 37.40 |
| G Sales Tax (if Not Included in Cash Price) | $ | N/A |
| H Other Taxes (if Not Included in Cash Price) | $ | N/A |
| I Government License and/or Registration Fees | | |
| License and/or Reg | $ | 58.80 |
| J Government Certificate of Title Fees | $ | 33.50 |
| K Government Vehicle Inspection Fees | $ | N/A |
| L Deputy Service Fee Paid to Dealer | $ | N/A |
| M Documentary Fee (Cargo Documental) | $ | 125.00 |

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW.

UN CARGO DOCUMENTAL NO ES UN CARGO OFICIAL. LA LEY NO EXIGE QUE SE IMPONGA UN CARGO DOCUMENTAL. PERO ÉSTE PODRÍA COBRARSE A LOS COMPRADORES POR EL MANEJO DE LA DOCUMENTACIÓN EN RELACIÓN CON LA VENTA. UN CARGO DOCUMENTAL NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN SE EXIGE POR LEY.

| N Other Charges (Seller must identify who is paid and describe purpose.) | | |
|---|---|---|
| to State  for Plate Transfer Fee | $ | N/A |
| to Seller  for Trade-In Credit Agreement | $ | N/A |
| to _____  for _____ | $ | N/A |
| to _____  for _____ | $ | N/A |
| to _____  for _____ | $ | N/A |
| to _____  for _____ | $ | N/A |
| to _____  for _____ | $ | N/A |
| to _____  for _____ | $ | N/A |
| to _____  for _____ | $ | N/A |
| to _____  for _____ | $ | N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 254.70 (4) |
| 5 Amount Financed (3 + 4) | $ | 14650.00 (5) |

**LIABILITY INSURANCE:** THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**LEGAL LIMITATIONS ON OUR RIGHTS**
If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**SERVICING AND COLLECTION CONTACTS**
We may try to contact you at any mailing address, e-mail address, or phone number you give us as the law allows. We may try to contact you in writing (including mail, e-mail, and text messages) and by phone (including prerecorded or artificial voice messages and automatic telephone dialing systems).

**Returned Check Charge:** You agree to pay a charge of $ 30 if any check you give us is dishonored or any electronic payment is returned unpaid.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____

Co-Buyer Signs X _____

Buyer Signs X _____  Co-Buyer Signs X _____

LAW 553-TX-ARB-eps 4/18 v1   Page 2 of 6

e.   **YOUR RIGHT TO REDEEM.** If we take your vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

f.   **DISPOSITION OF THE VEHICLE.** If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. If we sell the motor vehicle in a public or private sale, we will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

g.   **COLLECTION COSTS.** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows. You will also pay our reasonable out-of-pocket expenses incurred in connection with retaking, holding, and selling the vehicle as the applicable law allows.

h.   **CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS.** This contract may contain charges for insurance or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4.   **INTEGRATION AND SEVERABILITY CLAUSE**
     This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

---

**OCCC NOTICE.** For questions or complaints about this contract, contact _____ COASTAL CREDIT LLC _____ at (844) 871-4473 . The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.

---

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

---

Any change to this contract must be in writing. Both you and we must sign it. No oral changes to this contract are enforceable.

Buyer X _____     Co-Buyer X _____

See the rest of this contract for other important agreements.

**CONSUMER WARNING: Notice to the buyer--Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.**

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT: YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 6, BEFORE SIGNING BELOW.**

Buyer Signs X _____ Date 01/09/2019   Co-Buyer Signs X _____ Date 01/09/2019

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Date 01/09/2019   Address _____

Seller signs **JENO AUTOPLEX** _____ Date 01/09/2019   By X _____ Title _____

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

Buyer Signs X _____ Co-Buyer Signs X _____     LAW 553-TX-ARB-eps 4/18 v1   Page 5 of 6

Exhibit 1C

**PROPERTY INSURANCE.** You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want or provide proof of insurance you already have. The insurer must be authorized to do business in Texas. You agree to give us proof of property insurance. You must name us as the person to be paid under the policy in the event of damage or loss.
If any insurance is checked below, policies or certificates from the insurance companies will describe the terms, conditions, and deductibles.

### Optional Credit
### Life and Credit Disability Insurance

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Your decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

| ☐ Credit Life, one buyer | $ ____ N/A ____ Term ____ N/A ____ | ☐ Credit Disability, one buyer | $ ____ N/A ____ Term ____ N/A ____ |
| ☐ Credit Life, both buyers | $ ____ N/A ____ Term ____ N/A ____ | ☐ Credit Disability, both buyers | $ ____ N/A ____ Term ____ N/A ____ |

_____
(Insurance Company)

_____
(Home Office Address)

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments. If the term of the insurance is 121 months or longer, the premium is not fixed or approved by the Texas Insurance Commissioner.

**You want the insurance indicated above.**

X _____  01/09/2019     X _____  01/09/2019
Buyer's signature                     Date          Co-Buyer's signature                  Date

### Optional Insurance Coverages and Debt Cancellation Agreement

The granting of credit will not be dependent on the purchase of either the insurance coverages or the debt cancellation agreement described below. It will not be provided unless you sign and agree to pay the extra cost. The credit approval process will not be affected by whether or not you buy these insurance coverages or the debt cancellation agreement.

| Coverage | | Term in Months | | | Premium or Fee |
|---|---|---|---|---|---|
| GAP* _____ | | N/A | ☐ | $ | N/A |
| _____ | | _____ | ☐ | $ | N/A |
| _____ | | _____ | ☐ | $ | N/A |
| Debt Cancellation Agreement** _____ | | | | $ | N/A |

_____
(Insurance Company)

_____
(Home Office Address)

*If the vehicle is determined to be a total loss, GAP insurance will pay us the difference between the proceeds of your basic collision policy and the amount you owe on the vehicle, minus your deductible. You can cancel that insurance without charge for 10 days from the date of this contract.
**WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. You can cancel the debt cancellation agreement without charge for a period of 30 days from the date of this contract, or for the period stated in the debt cancellation agreement, whichever period ends later.
If the box next to a premium for an insurance coverage included above is marked, that premium is not fixed or approved by the Texas Insurance Commissioner. A debt cancellation agreement is not insurance and is regulated by the Office of the Consumer Credit Commissioner.
For the premiums or fees included above, you want the related optional coverages and debt cancellation agreement.

X _____  01/09/2019     X _____  01/09/2019
Buyer's signature                     Date          Co-Buyer's signature                  Date

## OTHER TERMS AND CONDITIONS

1. **FINANCE CHARGE AND PAYMENTS.**
   a. **HOW WE FIGURE THE FINANCE CHARGE.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.
   b. **HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
      1. earned but unpaid finance charge; and
      2. to anything else you owe under this agreement.

   c. **HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge. If that happens, your last payment will be more than your final scheduled payment, or at our option, you will have to pay more payments of the same amount as your scheduled payment with a smaller last payment. If you make scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase. We will send you a notice telling you about these changes before the final scheduled payment is due.

Buyer Signs X _____   Co-Buyer Signs X _____        LAW 553-TX-ARB-eps 4/18 v1   Page 3 of 6

Exhibit 1D

d. **TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

e. **SPECIAL PROVISIONS FOR BALLOON PAYMENT CONTRACTS.** A balloon payment is a scheduled payment more than twice the amount of the average of your scheduled payments, other than the downpayment, that are due before the balloon payment. You can pay all you owe when the balloon payment is due and keep your vehicle. If you buy the vehicle primarily for personal, family, or household use, you can enter into a new written agreement to refinance the balloon payment when due, without a refinancing fee. If you refinance the balloon payment, your periodic payments will not be larger or more often than the payments in this contract. The annual percentage rate in the new agreement will not be more than the Annual Percentage Rate in this contract. This provision does not apply if your Payment Schedule has been adjusted to your seasonal or irregular income.

2. **YOUR OTHER PROMISES TO US**

a. **USE AND TRANSFER OF THE VEHICLE.** You will not sell or transfer the vehicle without our written permission. If you do sell or transfer the vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00 ($50 for a heavy commercial vehicle). You will promptly tell us in writing if you change your address or the address where you keep the vehicle. We agree you may remove the vehicle from the U.S. for 72 hours or less, if the vehicle will continue to be covered by the insurance this contract requires. Otherwise, you agree not to remove the vehicle from the U.S. without our written permission.

b. **CARE OF THE VEHICLE.** You agree to keep the vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the vehicle. You will keep the vehicle in good repair. You will not allow the vehicle to be seized or placed in jeopardy or used illegally. You must pay all you owe even if the vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the vehicle, we may pay the third party any cost required to free the vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the vehicle. If you do not pay this amount, we may repossess the vehicle and add that amount to the amount you owe. If we do not repossess the vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

c. **SECURITY INTEREST.** To secure all that you owe on this contract and all your promises in it, you give us a security interest in:
   1. The vehicle including all accessories and parts now or later attached and any other goods financed in this contract;
   2. All insurance proceeds and other proceeds received for the vehicle;
   3. Any insurance policy, service contract or other contract financed by us and any proceeds of those contracts; and
   4. Any refunds of charges included in this contract for insurance, or service contracts.

   This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **AGREEMENT TO KEEP VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurer must be authorized to do business in Texas.

e. **OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our file.

f. **PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the vehicle, unless we agree otherwise in writing. However, if the vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

g. **RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** If we get a refund on insurance or service contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

h. **APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless you decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.

b. **DEFAULT.** You will be in default if:
   1. You do not pay any amount when it is due;
   2. You give false, incomplete, or misleading information on a credit application;
   3. You file bankruptcy, bankruptcy is filed against you, or the vehicle becomes involved in a bankruptcy.
   4. You allow a judgment to be entered against you or the collateral; or
   5. You break any of your promises in this agreement.

   If you default, we can exercise our rights under this contract and our other rights under the law.

c. **OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

d. **REPOSSESSION.** If you default, we may repossess the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If any personal items are in the vehicle, we can store them for you and give you written notice at your last known address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the vehicle.

Buyer Signs X _____  Co-Buyer Signs X _____        LAW 553-TX-ARB-eps4/18 v1    Page 4 of 6

Exhibit 1E

e. **YOUR RIGHT TO REDEEM.** If we take your vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

f. **DISPOSITION OF THE VEHICLE.** If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. If we sell the motor vehicle in a public or private sale, we will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

g. **COLLECTION COSTS.** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows. You will also pay our reasonable out-of-pocket expenses incurred in connection with retaking, holding, and selling the vehicle as the applicable law allows.

h. **CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS.** This contract may contain charges for insurance or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4.** **INTEGRATION AND SEVERABILITY CLAUSE**
This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

---

**OCCC NOTICE.** For questions or complaints about this contract, contact _____ COASTAL CREDIT LLC _____ at _____ (844) 871-4473 _____. The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.

---

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

---

Any change to this contract must be in writing. Both you and we must sign it. No oral changes to this contract are enforceable.

Buyer X _Ed. Fu_          Co-Buyer X _____

See the rest of this contract for other important agreements.

**CONSUMER WARNING: Notice to the buyer--Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.**

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT: YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 6, BEFORE SIGNING BELOW.**

Buyer Signs X _____ Date 01/09/2019   Co-Buyer Signs X _____ Date 01/09/2019

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ Date 01/09/2019   Address _____

Seller signs **JENO AUTOPLEX** _____ Date 01/09/2019   By X _____ Title _____

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

---

Buyer Signs X _Ed. Fu_   Co-Buyer Signs X _____        LAW 553-TX-ARB-eps 4/18 v1   Page 5 of 6

Exhibit 1F



Here is a list of some major defects that may occur in used vehicles.

**Frame & Body**
Frame-cracks, corrective welds, or rusted through
Dog tracks—bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or function in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr. Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged
Air Bags

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than 1/4 inch
Steering gear binds or jams
Front wheels aligned improperly (DOT specs.)
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage
Catalytic converter.

X _____

DEALER NAME
JENF AUTOPLEX
ADDRESS
6301 DENTON HWY FORT WORTH TX, 76148
TELEPHONE                                                    EMAIL
(817) 281-9911                          CHARROSALAZAR07@GMAIL.COM
FOR COMPLAINTS AFTER SALE, CONTACT:
_____

**IMPORTANT:** The information on this form is part of any contract to buy this vehicle. Removing this label before consumer purchase (except for purpose of test-driving) violates federal law (16 C.F.R. 455).

**ACCESS AMERICAN CASUALTY COMPANY**

| POLICY NUMBER | DECLARATIONS |
|---|---|
| 42AU000651459 | **NEW BUSINESS** |
| EFFECTIVE | EXPIRATION |
| 1/10/2019 | 1/10/2020 |

12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN

| NAMED INSURED AND ADDRESS | PRODUCER |
|---|---|
| EDRICK FULLER | SAROFIA AGENCIES, INC |
| 1906 BERWICK AVE | 2220 S. RL THORNTON FWY |
| DALLAS  TX 75203 | DALLAS TX 75224 |
| | 469-200-2777 |

| # | OPERATOR | DATE OF BIRTH | DRIVERS LICENSE | CLASS | TERR | SR22 |
|---|---|---|---|---|---|---|
| 1 | EDRICK FULLER | 11/12/1980 | 05359724 | 1A | 17 | |
| 2 | RONDESA CORMIEM | 5/24/1974 | EXCLUDED | | 17 | |

| PREMIUM FINANCE COMPANY | | ADDRESS | |
|---|---|---|---|

| # | YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | SYM |
|---|---|---|---|---|---|
| 1 | 2013 | FORD | F-150 SUPERCAB | 1FTFX1CF0DFA46085 | 15 |
| # | | | | | INT |

LEINHOLDER: ANY LOSS UNDER COVERAGE "D" IS PAYABLE TO THE NAMED INSURED AND LOSS PAYEE AS INTEREST MAY APPEAR

THE LIMIT(S) OF THE COMPANY'S LIABILITY IS AS STATED BELOW (FOR EACH CATEGORY OF COVERAGE). ABSENCE OF AN ENTRY IN ANY CATEGORY MEANS NO COVERAGE

| POL.SEC. | COVERAGE | LIMITS OF LIABILITY | VEH.1 | VEH. 2 | VEH.3 | VEH. 4 |
|---|---|---|---|---|---|---|
| A | BODILY INJURY  (PER PERSON / PER ACCIDENT) | 30,000/60,000 | $572 | | | |
| A | PROPERTY DAMAGE  (PER ACCIDENT) | 25,000 | $415 | | | |
| C | UNINSURED MOTORIST - BODILY INJURY | | | | | |
| C | UNINSURED MOTORIST PROPERTY DAMAGE | | | | | |
| C | UNDERINSURED MOTORIST - BODILY INJURY | | | | | |
| C | UNDERINSURED MOTORIST - PROPERTY DAMAGE | | | | | |
| B2 | PERSONAL INJURY PROTECTION | | | | | |
| D | COMPREHENSIVE  (LESS DEDUCTIBLE) | | $500 $500 DED $465 | | | |
| D | COLLISION  (LESS DEDUCTIBLE) | | $500 $500 DED $754 | | | |
| D | ROADSIDE ASSISTANCE - PER OCCURRENCE | | | | | |
| D | RENTAL  (REIMBURSEMENT) | | | | | |
| B1 | MEDICAL PAYMENTS | | | | | |
| | | SUB TOTAL | $2206 | | | |

| | |
|---|---|
| POLICY FEE | $144.00 |
| AUTOMOBILE BURGLARY AND THEFT PREVENTION AUTHORITY FEE | $2.00 |
| TOTAL POLICY PREMIUM | $2352 |

IF MORE THAN ONE AUTOMOBILE IS DESCRIBED ON THIS DECLARATIONS PAGE, THE LISTING OF SEPARATE PREMIUMS FOR EACH VEHICLE'S COVERAGE DOES NOT INCREASE THE COVERAGE AVAILABLE UNDER THIS POLICY. STACKING OF COVERAGE IS NOT ALLOWED UNDER THIS POLICY.

Printed on: 1/9/2019 4.07.08 PM

1 of 2

Exhibit 2

**POLICY CONTRACT AND ENDORSEMENTS:**
TXAPP011309, TXEXC110108, TXUMPIP011309, TXACK022015,
TXPOL032014, TXNDEA110108

**WARNING: A NAMED DRIVER POLICY DOES NOT PROVIDE COVERAGE FOR INDIVIDUALS RESIDING IN THE INSURED'S HOUSEHOLD THAT ARE NOT NAMED ON THE POLICY.**

NOTICE:  A fee of $2.00 is payable in addition to the premium due under this policy. This fee reimburses the insurer, as permitted by 28 TAC §5.205, for the $2.00 fee per motor vehicle year required to be paid to the Automobile Burglary and Theft Prevention Authority under Texas Civil Statutes, Article 4413(37), §10, which was effective on June 6, 1991, and revised effective September 1, 2011.

Exhibit 2A

## TEXAS LIABILITY INSURANCE CARD

**COMPANY #10730**

2211 BUTTERFIELD RD. SUITE 200
DOWNERS GROVE, ILLINOIS 60515
(630) 645-7750

**AMERICAN ACCESS**

| | |
|---|---|
| **Policy Number:** 42AU000651459 | |
| **Effective Date:** 01/09/2019 4:03PM CT | **Expiration Date:** 1/10/2020 |
| **Year** 2013 | **Make / Model** FORD/F-150 SUPERCAB | **VIN** 1FTFX1CF0DFA46085 |

**AGENCY INSURANCE CO. ISSUING CARD:**
SAROFIA AGENCIES, INC. - RL THORNTON 469-200-2777

**Insured:** EDRICK FULLER

**Driver(s) Covered:** EDRICK FULLER

| **Address** | **City, State, Zip** |
|---|---|
| 1906 BERWICK AVE | DALLAS , TX 75203 |

This policy provides at least the minimum amounts of liability insurance required by the Texas Motor Vehicle Safety Responsibility Act for the specified vehicles and named insureds and may provide coverage for other persons and other vehicle as provided by the insurance policy.

**IF YOU HAVE AN ACCIDENT NOTIFY POLICE IMMEDIATELY**

**REPORT ALL ACCIDENTS TO YOUR AGENT/AMERICAN ACCESS CASUALTY COMPANY AS SOON AS POSSIBLE.**
**OBTAIN THE FOLLOWING INFORMATION:**

1. Name, address, and telephone numbers of each driver, passenger, and witness.
2. Name of insurance company and Policy number for each vehicle involved.

**Do not admit fault. Do not discuss the accident with anyone except your** insurance agent, American Access Casualty Company or the police.

1-888-663-5443

Examine policy exclusions carefully. This form does not constitute any part of your insurance policy.

See Important Information On Reverse Side
**WARNING: A NAMED DRIVER POLICY DOES NOT PROVIDE COVERAGE FOR INDIVIDUALS RESIDING IN THE INSURED'S HOUSEHOLD THAT ARE NOT NAMED ON THE POLICY.**

## TEXAS LIABILITY INSURANCE CARD

**Keep this card**

**IMPORTANT:** You must show this card or a copy of your insurance policy when you apply for or renew your:

- Motor vehicle registration
- Driver's License
- Motor vehicle safety inspection sticker

You also may be asked to show this card or your policy if you have an accident or if a peace officer asks to see it.

All drivers in Texas must carry liability insurance on their vehicles or otherwise meet legal requirements for financial responsibility. Failure to do so could result in fines up to $1,000, suspension of your driver's license and motor vehicle registration, and impoundment of your vehicle for up to 180 days (at a cost of $15 per day).

## Tarjeta de Seguro de Responsabilidad Civil de Texas

**Guarde esta tarjeta.**

**IMPORTANTE:** Usted debe mostrar esta tarjeta o una copia de su póliza de seguro cuando solicite o renueve su:

- Registro del vehículo motorizado
- Licencia de conducir
- Etiqueta de inspección de seguridad para su vehículo

También se puede pedir que usted muestre esta tarjeta o su póliza si tiene un accidente o si se la pide un oficial de policía.

Todos los conductores en Texas deben tener seguro de responsabilidad civil para sus vehículos, o de lo contrario deben cumplir con los requisitos legales de responsabilidad financiera. Si usted no cumple con los requisitos de responsabilidad financiera, podría estar sujeto a pagar una multa de hasta $1,000, más la suspensión de su licencia de conducir y la suspensión del registro del vehículo, y además su vehículo podría ser confiscado por hasta 180 días (a un costo de $15 por día).

Exhibit 2B



11/27/23, 7:28 PM                                    Gmail - insurance card and dec page

Gmail                                                          E F <edricpauls@gmail.com>

insurance card and dec page

Stephanie Alvarez <salvarez.aiu@gmail.com>
To: edricpauls@gmail.com
Cc: jonathon.hasling@gmail.com

Attached is the dec page and insurance  card

Stephanie A.
Customer Service Representative
2220 S. RL Thornton Freeway, Dallas, Tx 75224

2 attachments

fuller.pdf
30K

fuller2.pdf
92K

https://mail.google.com/mail/u/0/?ik=36cfa14413&view=pt&search=all&permmsgid=msg-f:1622222910502631483&simpl=msg-f:1622222910502631483     1/1

Exhibit 3

Photo from Jeno Aotoplex Facebook page



Exhibit 4



## ACCOUNT STATEMENT

7508 FERGUSON RD DALLAS, TX 75228

| Account # | Statement Period | Page |
|---|---|---|
| 0000008134 | 02/01/2019 - 02/28/2019 | 1 of 2 |

### 2019 Annual Meeting

Join us on Thursday, March 21st, at our Dallas
Branch. The Annual Meeting  will begin at 6:00 pm
with an overview from the 2018 business year,
followed by the election for the open position on the
Board of Directors. Door prizes and refreshments
will be provided. We hope to see you there!

EDRICK P FULLER
1906 BERWICK
DALLAS TX 75203

800.588.6928 | www.LoneStarCU.org

### SAVINGS: Savings Account (Suffix 0000)

| Tran Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| Your balance as of 02/01/2019 | | | 2,027.51 |
| 02-08-2019 | Withdrawal | -1,000.00 | 1,027.51 |
| 02-14-2019 | ATM Kiest Market 2 DALLAS TX | -102.50 | 925.01 |
| 02-14-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 923.01 |
| 02-14-2019 | ATM 000000000122821 Dallas TX | -102.00 | 821.01 |
| 02-14-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 819.01 |
| 02-15-2019 | Withdrawal | -144.46 | 674.55 |
| 02-15-2019 | Withdrawal | -33.00 | 641.55 |
| 02-15-2019 | ATM 000000000143867 Dallas TX | -102.50 | 539.05 |
| 02-15-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 537.05 |
| 02-17-2019 | ATM ELAM FOOD MA-100 BALCH SPRINGS TX | -62.75 | 474.30 |
| 02-17-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 472.30 |
| 02-17-2019 | Withdrawal | -13.00 | 459.30 |
| 02-17-2019 | ATM ELAM FOOD MA-100 BALCH SPRINGS TX | -102.75 | 356.55 |
| 02-17-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 354.55 |
| 02-18-2019 | Withdrawal | -23.00 | 331.55 |
| 02-18-2019 | ATM Kiest Market 2 DALLAS TX | -62.50 | 269.05 |
| 02-18-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 267.05 |
| 02-18-2019 | ATM LITTLE WORLD GRO DALLAS TX | -21.75 | 245.30 |
| 02-18-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 243.30 |
| 02-20-2019 | Fee Withdrawal: Debit Card Replacement Fee | -10.00 | 233.30 |
| 02-20-2019 | Withdrawal | -205.00 | 28.30 |
| 02-25-2019 | Withdrawal | -3.30 | 25.00 |
| Your new balance as of 02/28/2019 | | | 25.00 |
| | | | |
| Interest paid Year-to-Date on Suffix 0000 | | 0.00 | |

### CHECKING: Lone Star FREEdom Checking (Suffix 0010)

| Tran Date | Transaction Description | Amount | Balance |
|---|---|---|---|
| Your balance as of 02/01/2019 | | | 135.80 |
| 02-08-2019 | Card purchase Amazon Prime Amzn.com/bill WA | -14.06 | 121.74 |
| 02-08-2019 | Deposit | 1,000.00 | 1,121.74 |
| 02-09-2019 | POS 7-ELEVEN DALLAS TX | -20.00 | 1,101.74 |
| 02-09-2019 | ATM 7ELEVEN-FC DALLAS TX | -60.00 | 1,041.74 |
| 02-09-2019 | Bill payment Withdrawal | -439.68 | 602.06 |
| 02-09-2019 | ATM Kiest Market 2 DALLAS TX | -202.50 | 399.56 |
| 02-09-2019 | Fee Withdrawal: Non Network ATM Transaction Fee | -2.00 | 397.56 |
| 02-11-2019 | ATM 7ELEVEN-FC DALLAS TX | -60.00 | 337.56 |
| 02-11-2019 | POS FIESTA MART #34 DALLAS TX | -28.64 | 308.92 |
| 02-11-2019 | ATM 313 SHOP DALLAS TX | -62.50 | 246.42 |

## Exhibit 5



8/19/23, 1:17 AM

Gmail - FOLLOW UP

E F <edricpauls@gmail.com>

**FOLLOW UP**

1 message

Lee Le <lle@cigfinancial.com>                                    Sat, Nov 30, 2019 at 9:52 AM
To: "EDRICPAULS@GMAIL.COM" <EDRICPAULS@gmail.com>

Good morning Mr. Fuller;

Please call me 949-271-4268.

Thanks,

**Lee Le**

**CIG Financial, LLC**

☎ 949-271-4268 direct

7 949-705-6234 fax

✉ lle@cigfinancial.com

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. The information herein is
confidential, privileged and exempt from disclosure under applicable law. This E-mail (including attachments) are intended solely for the use of the addressee
hereof. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise
using this transmission. The originator of this e-mail and its affiliates do not represent, warrant or guarantee that the integrity of this communication has been
maintained or that this communication is free of errors, viruses or other defects. Delivery of this message or any portions herein to any person other than the

Exhibit 6



Exhibit 7

8/19/23, 1:20 AM                                    Gmail - ** FINAL 2300759 EDRICK FULLER

M Gmail                                                                    E F <edricpauls@gmail.com>

**\*\* FINAL 2300759 EDRICK FULLER**
5 messages

**John Cruz** <jcruz@cigfinancial.com>                                    Mon, Dec 30, 2019 at 11:21 AM
To: "EDRICKPAULS@GMAIL.COM" <EDRICPAULS@gmail.com>

Please contact CIG FINANCIAL 949-271-4248.

Your account will be CHARGE OFF tomorrow @ 12:00 pm

If your account is charged off, the account will be transferred to our Loss Recovery department. I will not be able to assist you once that happens.

By charging off the account mean you are losing the right over the vehicle and keep out for repo until its payoff or recover.

John Cruz

**Recovery Department**



Direct Phone # **949-271-4248**

Toll Free 877-244-4442 x 4248

Money Gram Code # 7378

Western Union Quick Collect Citycode # CIG State CA

www.paynearme.com/cigfinancial

Hours of Operation

https://mail.google.com/mail/u/0/?k=36cfa14413&view=pt&search=all&permthid=thread-f:1654366104746382099&simpl=msg-f:1654366104746382099&simpl=msg-f:1654485486001166872&simpl=ms...   1/4

Exhibit 8



Exhibit 8B Phishing



Exhibit 9





11:09

Chance2change
+12147720226

in trouble for it?
2:04 PM

**C**  That's the update
Mr Fuller.
2:05 PM

Your overall
projection of me
in the report was I
am disrespectful
and late in fees.
When people do
stuff like that, they
have something
against you. I know
my views are not
liked by your kind,
meaning state
and government
workers. Y'all like
the submissive ma

Exhibit 10



E F <edricpauls@gmail.com>

## ** CIG FINANCIAL 2300759 DEFERMENT
1 message

**John Cruz** <jcruz@cigfinancial.com>                                                   Tue, Oct 8, 2019 at 5:11 PM
To: "EDRICPAULS@GMAIL.COM" <EDRICPAULS@GMAIL.COM>

NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. The information herein is confidential, privileged and exempt from disclosure under applicable law. This E-mail (including attachments) are intended solely for the use of the addressee hereof. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating, or otherwise using this transmission. The originator of this e-mail and its affiliates do not represent, warrant or guarantee that the integrity of this communication has been maintained or that this communication is free of errors, viruses or other defects. Delivery of this message or any portions herein to any person other than the intended recipient is not intended to waive any right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message from your system.

C:\Users\jcruz\AppData\Roaming\NLS\temp\D69FFE33A8D64362AA469DFC8FB7A1BA\TWO DEFERMENTS REQUEST.pdf
82K

**CIG** FINANCIAL
CAPITAL INCENTIVE GROUP

CIG Financial, LLC
PO Box 19795
Irvine, CA 92623

| INTERNAL USE ONLY | |
|---|---|
| DPD | |
| X NUM YES NO | |
| X FREQ YES NO | |
| 2 X DEF | |

October 8, 2019

## TWO-MONTH DEFERMENT AGREEMENT

EDRICK FULLER
1906 BERWICK AVENUE

DALLAS, TX 75203

## ACCOUNT: 2300759

You have requested a deferment on your CIG Financial account according to the following terms:

Your payments due on 06/15/2019 and 08/15/2019 will be deferred to the end of the contract, and your next payment will be due on 10/15/2019.

FINANCE CHARGES WILL CONTINUE TO ACCRUE ON THE UNPAID BALANCE AT THE CONTRACT RATE. BY DEFERRING ONE OR MORE INSTALLMENTS, YOU WILL PAY MORE IN FINANCE CHARGES THAN ORIGINALLY DISCLOSED. There is no fee for deferring a payment.

Complete the following section for all contract parties, then sign the form and fax or email this letter as indicated below.

| CUSTOMER 1 | | CUSTOMER 2 | |
|---|---|---|---|
| HOME ADDRESS | | HOME ADDRESS | |
| WORK NAME | | WORK NAME | |
| WORK ADDRESS | | WORK ADDRESS | |
| WORK PHONE | | WORK PHONE | |
| HOME PHONE | | HOME PHONE | |
| CELL PHONE | | CELL PHONE | |
| EMAIL ADDRESS | | EMAIL ADDRESS | |

Three references are required. Please provide name, address, and phone.

| REFERENCE | NAME ADDRESS PHONE | |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

To approve your request, we must receive this completed form and any payment indicated above by 5:000PM Pacific time on or before 10/15/2019.

By signing below, you agree to the modification of your contract according to the change you have requested.

Signature: _____   Date: _____

>>>>> FAX THIS FORM BACK TO : (949) 705-6270 <<<<<
>>>>> OR EMAIL TO: jcruz@cigfinancial.com <<<<<

PREPARED BY: John Cruz   APPROVED BY: _____