IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| EDRICK FULLER, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:22-CV-1289-D |
| VS. | § |
| | § |
| CIG FINANCIAL, LLC, et al., | § |
| | § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiff Edrick Fuller ("Fuller") brings this action against defendants CIG Financial, LLC ("CIG") and The Car Source, LLC d/b/a Hide and Seek Recovery ("Car Source") arising from an unsuccessful attempt to repossess his pickup truck, which he had purchased on credit. CIG and Car Source each move for summary judgment. For the reasons that follow, the court grants both motions and dismisses the remainder of this action by judgment filed today.[1]

I

The court assumes the parties' familiarity with its prior memorandum opinions and orders in this case,[2] and recounts only the background facts and procedural history necessary

---

[1] A third defendant, Julius Sims, was dismissed by Fed. R. Civ. P. 54(b) final judgment on March 29, 2023.

[2] *Fuller v. CIG Fin., LLC*, 2022 WL 4071964 (N.D. Tex. Sept. 2, 2022) (Fitzwater, J.); *Fuller v. CIG Fin., LLC*, 2022 WL 4227518 (N.D. Tex. Sept. 13, 2022) (Fitzwater, J.); *Fuller v. CIG Fin., LLC*, 2023 WL 146251 (N.D. Tex. Jan. 10, 2023) (Fitzwater, J.); *Fuller v. CIG Fin., LLC*, 2023 WL 6931342 (N.D. Tex. Oct. 19, 2023) (Fitzwater, J.).

to understand this memorandum opinion and order.

In January 2019 Fuller purchased a pickup truck under a financing agreement with a lender (the "Note") that was later assumed by CIG. After several months of inconsistent payments on the Note, CIG sent Fuller a final notice on December 30, 2019 that the truck would be "charged off," meaning that his account would be written off as a loss and CIG would proceed under the financing agreement as if Fuller had defaulted. This charge-off was reflected on Fuller's credit reports.

CIG hired Consolidated Asset Recovery System ("CARS") to repossess the truck. Without CIG's knowledge, CARS delegated the repossession to Car Source. On December 31, 2019 Julius Sims ("Sims"), a repossession agent sent by Car Source, attempted to repossess the truck. Fuller resisted the attempt at repossession by refusing to exit the truck when Sims hoisted it behind his tow truck. After several hours of waiting and a phone call with a CIG representative, Sims towed the suspended truck out of Fuller's driveway while Fuller was still inside, stopping after approximately 100 yards. Both Fuller and Sims called the police, who instructed Sims to release the truck. To date, Fuller still possesses the truck but has made no further payments on the Note.

After unsuccessfully filing a claim with the American Arbitration Association ("AAA"), Fuller filed this action, alleging claims under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2021); Texas Debt Collection Act ("TDCA"), Tex. Fin. Code Ann. § 392.001 *et seq.* (West

2019); and Texas law.

CIG and Car Source have filed separate motions for summary judgment. Both defendants assert that Fuller's FDCPA, DTPA, and Texas tort law claims are barred by the statute of limitations and that Fuller has failed to show a basis for equitable tolling. CIG also contends that (1) CIG cannot be held vicariously liable for the alleged damages to Fuller caused by Car Source and Sims; (2) Fuller's alleged damages were not a foreseeable consequence of CIG's contract with CARS to repossess Fuller's vehicle; (3) Fuller has not proved, and cannot prove, actual damages on any of his claims; (4) Fuller's alleged damages were caused by his own fault or his intentional actions, negligence, or omissions; and (5) any recovery by Fuller is barred or limited by the Note's Limitations of Liability clause. Car Source also contends that, under the TDCA, Fuller either cannot prove actual or statutory damages or is barred from doing so, because he admitted to having no damages by failing to respond to defendants' requests for admissions and other discovery. Fuller opposes each motion, which the court is deciding on the briefs, without oral argument.

II

The court begins by addressing a threshold matter: whether Fuller's avoidance of dismissal at the pleading stage of this case dictates the same outcome at the summary judgment stage.

Fuller appears to believe that, because the claims at issue in defendants' motions for summary judgment survived defendants' motions to dismiss based on the pleadings, the claims necessarily survive defendants' motions for summary judgment, so defendants'

renewed challenges to these claims must fail. The court disagrees, because motions to dismiss and motions for summary judgment are governed by different procedures and standards.

A motion to dismiss is decided on the basis of the sufficiency of the complaint and a limited group of other documents. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"); *Tex. Health & Human Servs. Comm'n v. United States*, 193 F.Supp.3d 733, 738 (N.D. Tex. 2016) (Godbey, J.) (on motion to dismiss, courts generally limit review to face of pleadings, but can consider certain limited categories of documents outside pleadings, like documents incorporated into complaint by reference or matters of which they can take judicial notice). The motion is denied unless the plaintiff fails to plead a plausible claim. *See Twombly*, 550 U.S. at 556, 570 (citation and internal quotation marks omitted) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely"; but when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

A summary judgment decision, however, is not confined to the allegations of the complaint and the contents of a limited group of other documents: it can be based on evidence, or, as pertinent here, on the absence of evidence that is sufficient to raise a genuine issue of material fact. When parties move for summary judgment on claims on which the

opposing party will bear the burden of proof at trial, the moving parties can meet their summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving parties do so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam); *Caldwell v. Dallas County*, 2002 WL 31016524, at *2 (N.D. Tex. Sept. 5, 2002) (Sanderson, J.) (the nonmovant "may not merely rely on his pleadings, but must come forward with competent evidence that refutes the movant's summary judgment materials"); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255-56 (1986) ("the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment"). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson*, 477 U.S. at 248. The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

    Accordingly, the fact that Fuller's claims survived dismissal in response to a motion to dismiss addressed to the sufficiency of the pleadings does not mean that he is entitled to avoid dismissal of these claims in the context of a summary judgment motion.

III

The court now turns to the merits of defendants' motions, considering first their limitations defense to Fuller's FDCPA, DTPA, and Texas tort law claims.

A

Limitations is an affirmative defense on which defendants will have the burden of proof at trial. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (characterizing as an affirmative defense the assertion that Americans with Disabilities claim was untimely); *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.) (treating "timeliness *vel non* of [plaintiff's] Title VII claim as affirmative defense"). To obtain summary judgment, defendants must establish "beyond peradventure all of the essential elements of the . . . defense." *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

By contrast, "[t]he plaintiff has the burden to provide justification for equitable tolling." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citing *Wilson v. Sec'y, Dep't of Veterans Affs.*, 65 F.3d 402, 404 (5th Cir. 1995) (per curiam)). The plaintiff must "show a factual basis to toll the limitations period." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)).

B

Defendants have satisfied their burden of showing that—unless equitable tolling applies—Fuller's FDCPA, DTPA, and Texas tort law claims are time-barred.

Under the FDCPA, "an action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Thus the applicable statute of limitations for all FDCPA claims is one year from the date on which the objectionable conduct occurred. There is no applicable discovery rule—that is, it is irrelevant to the calculation of the limitations period when the potential plaintiff discovered the FDCPA violation. *Rotkiske v. Klemm*, 589 U.S. ___, 140 S.Ct. 355, 360 (2019). Here, one year from the date of defendants' alleged wrongdoing is December 31, 2020. Fuller's suit, as defendants point out, was filed well after that date—on June 14, 2022—and was therefore filed outside of the FDCPA's limitations period. Unless equitable tolling applies, Fuller's FDCPA claim is time-barred.

Fuller's DTPA claim is subject to a two-year statute of limitations. *See* Tex. Bus. & Com. Code Ann. § 17.565; *accord Dragustinovis v. Centroplex Auto. Recovery, Inc.*, 2019 WL 613847, at *2 (Tex. App. Feb. 14, 2019, no pet.) (mem. op.). His Texas tort law claims are also governed by a general two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003. Two years from the date of the repossession incident is December 31, 2021. Because Fuller filed suit on June 14, 2022, his DTPA claim and his Texas tort law

claims are also time-barred, unless equitable tolling applies.

C

The court next addresses whether the doctrine of equitable tolling applies.

1

"'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (per curiam) (quoting *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998)). "Equitable tolling, however, is a narrow exception. It is an equitable modification that should be 'applied sparingly.'" *Phillips*, 658 F.3d at 457 (quoting *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002)); *see also Perez v. United States*, 167 F.3d 913, 919 (5th Cir. 1999) (equitable tolling "is not [a doctrine] that trial courts have discretion to use whenever they please"); *Davis*, 158 F.3d at 811 (equitable tolling is limited to "rare and exceptional circumstances"). The doctrine applies "principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996).

2

In *Fuller v. CIG Financial, LLC*, 2022 WL 4071964 (N.D. Tex. Sept. 2, 2022) (Fitzwater, J.), the court held that Fuller had plausibly pleaded that "several events that occurred between his first attempt to bring suit against the defendants in April 2020 and the date on which he filed the instant lawsuit excuse the untimeliness of his claims." *Id.* at *3.

But while those allegations were sufficient to survive a motion to dismiss, Fuller has not provided proof that could form a basis for tolling the limitations period such that his time-barred claims can survive summary judgment. *See supra* § II (explaining the difference between a motion to dismiss and a motion for summary judgment).

Fuller brings one main argument in favor of equitable tolling: the assertion that CIG conspired with his former attorney to prevent him from filing this lawsuit. But he admitted in his deposition that he has no concrete evidence of such conduct and is relying on "what's insinuated through emails." D. App. (ECF No. 61-1) at 1. The record does not contain any emails or other evidence that would enable a reasonable jury to find that such a conspiracy existed.

Car Source also contends that Fuller cannot argue that the statute of limitations should be tolled during the period when the AAA considered his arbitration demand. Fuller does not actually raise this argument in his responses to defendants' summary judgment motions. But even if he did, "a 'demand for arbitration does not toll the statute of limitations'" because a claimant demanding arbitration "is not required to wait until the outcome of the arbitration to file a lawsuit." *Fonseca v. USG Ins. Servs., Inc.*, 467 Fed. Appx. 260, 261 (5th Cir. 2012) (per curiam) (quoting *United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1013 (5th Cir. 1976)). "In this case, [Fuller] could have (and should have) filed [his] suit within the statute of limitations and, thereafter, sought a stay of the action pending arbitration," which "would have guaranteed that the lawsuit was brought within the limitations period without waiving any right to arbitration which may have

existed." *Id.* Ultimately, any evidence that Fuller would provide of delay in the AAA's consideration of his demand for arbitration would not constitute proof that defendants misled him or prevented him from pursuing this lawsuit, given that he was not required to wait until the AAA declined his demand for arbitration to file suit.

Thus Fuller has not satisfied his burden of producing evidence that would enable a reasonable jury to find in his favor on equitable tolling. Defendants are therefore entitled to summary judgment dismissing Fuller's FDCPA, DTPA, and Texas tort law claims as barred by the statute of limitations.

IV

The court now considers Fuller's one remaining claim: the TDCA claim.

A

The TDCA prohibits certain threatening or coercive debt collection practices. Relevant here, the statute provides that:

> (a) [i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: (1) using or threatening to use violence or other criminal means to cause harm to a person or property of a person; . . . or (8) threatening to take an action prohibited by law."

Tex. Fin. Code Ann. § 392.301(a) (West 2019). To recover under the TDCA, a plaintiff must prove:

> (1) the debt at issue is a consumer debt; (2) the defendant is a "debt collector" within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act.

*Clark v. Wells Fargo Bank, N.A.*, 2020 WL 1216720, at *6 (N.D. Tex. Jan. 28, 2020) (Horan, J.) (citing Tex. Fin. Code Ann. § 392.001 *et seq.*). "Proof of an actual injury is a liability element of [a] TDCA claim[]," *Williams v. Lakeview Loan Servicing LLC*, ___ F.Supp.3d ___, 2023 WL 6282829, at *19 (S.D. Tex. Sept. 26, 2023) (citing *Kerr v. Bank of N.Y. Mellon Tr. Co., N.A. as Tr. of CWABS Asset-Backed Certificates Tr. 2007-12*, 2021 WL 1421440, at *7 (Tex. App. Apr. 15, 2021, pet. denied)), as is showing "a causal connection between the improper debt collection practice and the harm suffered," *Searcy v. CitiMortgage, Inc.*, 733 Fed. Appx. 735, 739 (5th Cir. 2018) (per curiam).

B

1

Fuller alleges that defendants violated §§ 392.301(a)(1) and 392.301(a)(8), and accordingly requests declaratory relief, injunctive relief, actual damages, and fees and costs. Defendants maintain that they are entitled to summary judgment on this claim because Fuller has failed to produce proof as to all of its elements. In particular, they contend that Fuller has not produced evidence supporting his allegation as to the fifth element: that he was injured, and that any such injury was the result of an act by defendants that violates the TDCA.

Fuller enumerates many difficulties he has experienced since the day of the repossession incident, which he alleges are injuries caused by defendants' "whole scam on [him]." P. Br. (ECF No. 65) at 11. These alleged injuries include stress, anxiety, and emotional distress; a poor credit score; an inability to qualify for student loans, COVID-19-related financial assistance, or loans for a new car or house; and his arrest and criminal conviction for the physical assault of his girlfriend, as well as his inability to finish probation on schedule for that conviction.

As set out above, the TDCA claim's fifth element requires Fuller to produce evidence (1) that he was injured *and* (2) that his injury was caused by an act of the defendants that violates the TDCA. The court therefore considers whether Fuller has produced proof that these various alleged injuries occurred, and, as to the injuries for which Fuller has produced proof of occurrence, whether he has also adduced proof that they were caused by an act of the defendants that is prohibited by the TDCA.

2

For several of his alleged injuries, Fuller has not produced sufficient evidence for a reasonable jury to find in his favor.

Regarding his allegation that he has suffered "stress, anxiety, and emotional distress," including distress whenever he smells diesel fuel, he admitted in a discovery response that he "has no documentation to provide for medical records," D. App. (ECF No. 60) at 173, and he points to no other evidence in the record that could substantiate this allegation. His deposition testimony also indicates that he is able to perform his job using a regular-fuel

truck and that he has never been fired from a job for his unwillingness to be near a diesel truck.

Fuller has also failed to produce proof that his credit score decreased as a result of the repossession incident. Although in discovery he provided several credit reports from dates after the repossession incident, he has not produced any credit reports from before the incident, and he admits that he does not know what his credit score was at any point prior to the incident.

Fuller has also failed to produce proof that he is unable to qualify for student loans. He has presented financial aid documents from his university detailing student loans he has already obtained, but these documents would not enable a reasonable jury to find that he is precluded from obtaining further student loans. The record is also devoid of proof that Fuller is unable to qualify for loans toward a new car or house. There are no documents indicating that he has even sought such loans since the repossession incident or that any application he made for such loans was rejected, nor does he provide any concrete evidence that individuals with his credit history would generally be rejected for such loans.

Finally, Fuller has not produced proof that he was unable to finish probation on schedule for his conviction for assaulting his girlfriend. He points in the record to several text messages between him and a recipient called "Chance2change" as evidence that can support his allegation that he was removed from a class required to complete probation. But these messages do not clearly state that he was removed from the class, nor do they actually show anything besides Fuller's assumptions about why the class instructor filed a report

about him.

Accordingly, a reasonable jury could not find that he has satisfied the fifth element of his TDCA claim based on these alleged injuries.

3

Fuller *has* produced proof that a few of his other alleged injuries in fact occurred. The record contains a letter indicating that the U.S. Small Business Administration rejected his application for an Economic Injury Disaster Loan due to his low credit score, which at least partially substantiates his allegation that he did not qualify for COVID-19-related government financial assistance after the repossession incident. Fuller has also provided documentation substantiating his allegation that he was arrested and criminally convicted for stalking, assault, and bodily injury to a family member. But, critically, he has not produced evidence that would enable a reasonable jury to find that these injuries are linked to an action by defendants that violates the TDCA. Based on his theory of the case, he would need to present proof that would enable a reasonable jury to find that these injuries were caused by defendants' "using or threatening to use violence or other criminal means to cause harm to a person or property of a person" or "threatening to take an action prohibited by law" in debt collection. Tex. Fin. Code Ann. § 392.301(a) (West 2019). The record contains no evidence substantiating a causal connection between such acts by defendants and these injuries. If anything, Fuller seems to allege that these injuries resulted from his poor credit score, which he in turn alleges was a result of defendants' actions. But

- 14 -

> [i]t is well settled in Texas that a prior and remote cause cannot be made the basis for an action for damages if it did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if the injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have happened but for such condition.

*City of Bishop v. S. Tex. Elec. Co-op., Inc.*, 577 S.W.2d 331, 336 (Tex. Civ. App. 1979, no writ) (citations omitted).

Furthermore, Fuller has not identified evidence that provides the basis for his calculations of actual damages, statutory damages, or punitive damages. In his deposition, he maintained that his damages calculations "all add[] up," but he could not quantify what his damages were as a result of each of his alleged injuries. D. App. (ECF No. 60) at 33-34, 38-39. He has not since provided such evidence elsewhere in the record.

4

Ultimately, having reviewed the evidence in the record and Fuller's responses to the instant motions, the court agrees with defendants that Fuller has failed to produce proof that would enable a reasonable jury to find in his favor as to the fifth element of his TDCA claim. Because Fuller has not gone beyond his pleadings and designated specific facts showing that there is a genuine issue for trial on each element of this claim, summary judgment in favor of both defendants is mandatory.

V

CIG advances several other arguments in favor of granting summary judgment. But because the court is granting CIG's motion on the grounds addressed above, it need not

address CIG's other arguments.

* * *

For the reasons explained, the court grants CIG's motion, grants Car Source's motion, and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

December 21, 2023.

                                                  SIDNEY A. FITZWATER
                                                  SENIOR JUDGE